AMERITECH, INC., an Ohio
corporation, Plaintiff,

v.

AMERICAN INFORMATION TECH-
NOLOGIES CORPORATION, a
Delaware corporation, Defendant.

No. C83–4993.

United States District Court,
N.D. Ohio, E.D.

April 19, 1985.

Edwin W. Oldham, Akron, Ohio, for
plaintiff.

Thomas P. Mulligan, Jones, Day, Reavis
& Pague, Cleveland, Ohio, Robert G. Krup-

**612**

ka, Richard H. Schneider, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

WHITE, District Judge.

Plaintiff Ameritech, Inc., is a corporation incorporated under the laws of Ohio and having its principle place of business in Bedford Heights, Ohio. The defendant, American Information Technologies Corporation, (AIT) is organized under the laws of Delaware and has its principle place of business in Illinois. On this basis the plaintiff commenced this action pursuant to the Court's diversity jurisdiction. 28 U.S.C. § 1332. Plaintiff also asserts that this is a case involving trademark infringement and unfair competition; allowing jurisdiction in this Court under 28 U.S.C. § 1338(a) and (b).

According to the complaint, the plaintiff corporation was formed in June 1979 and has done business continuously under the name Ameritech, Inc., from that time until the present date. The trade name "Ameritech" was registered with the State of Ohio on December 31, 1979. The plaintiff is engaged in the business of providing high-technology engineering services directed towards reclaiming of industrial lubricants and providing analytical laboratory services. Plaintiff has made substantial expenditures for advertising and promotion and has used the name "Ameritech" in connection with high technology engineering services and as a result the name has come to be recognized by the trade and purchasing public as identifying plaintiff and the services provided by plaintiff. The trade name "Ameritech" has acquired secondary meaning and has become a business asset of considerable value. The defendant AIT provides high-technology communication services to businesses and the general public in several states. On June 17, 1983 defendant used the name "Ameritech" to identify itself and its services in an advertisement in a nationally circulated publication and has continued to use this name in advertising in major newspapers in five states as well as in magazines. It is also listed on the New York Stock Exchange. Plaintiff has achieved a profitable business having plans to expand and has notified its shareholders of its intention to go public with its stock for the purposes of raising additional working capital and bringing a good return on investment to the original shareholders. Plaintiff has adopted a star-shaped logo while defendant uses a star-shaped relationship of the letter "A" in its use of the mark "Ameritech." It is alleged that use of plaintiff's trade name "Ameritech" by defendant is likely to injure plaintiff's business reputation. Employment of the name "Ameritech" has caused actual confusion in the trade and to the purchasing public so that the name "Ameritech" is no longer exclusively associated with plaintiff and has further resulted in interference with plaintiff's business activities on a day-to-day basis and with respect to plans for growth and expansion. The acts of defendant were taken with knowledge that injury and harm would result. Defendant's actions were allegedly willful and intentional and constitute trademark infringement and unfair competition. Plaintiff prays for a permanent injunction enjoining use of the name "Ameritech" along with an accounting to plaintiff for any and all profits derived by defendant and for all damages caused by defendant's illegal conduct and that all packages, signs, advertising, and promotional material in possession or control of defendant that includes the name "Ameritech" be delivered and destroyed. The defendant has moved the Court for summary judgment contending that plaintiff's claim for relief is barred by estoppel by laches and on grounds that plaintiff's products and services are completely unrelated to those of defendant precluding the likelihood of confusion.

A successful defense of laches by estoppel requires evidence that there was an unreasonable delay in bringing the action and the delay must result in prejudicial reliance by the opposing party. *T.W.M. Manufacturing Co. Inc. v. Duro Corporation*, 592 F.2d 346 (6th Cir.1979), *Tandy Corporation v. Malone and Hyde, Inc.*,

581 F.Supp. 1124 (M.D.Tenn.1984). The length of delay necessary to establish laches depends on the circumstances of each case and on the degree of injury and prejudice to the party asserting this defense. *Tandy Corp. v. Malone and Hyde, Inc., supra.*

■ The depositions and exhibits submitted in support of defendant's motion for summary judgment demonstrate that laches apply to this case. Plaintiff learned of defendant's intention to use the name "Ameritech" on June 17, 1983. The next day an article appeared in the Cleveland Plain Dealer wherein it was stated that lawyers for plaintiff would contact defendant Ameritech in Chicago on Monday. However no one ever contacted defendant until this lawsuit was filed. Kenneth Millard, Senior Vice President and General Counsel for American Information Technologies Corp., was aware of the Plain Dealer article in June. Five days after the "Ameritech" name was announced AIT was sued in Michigan state court by a corporation known as Ameritech Corporation alleging trademark infringement and unfair competition. Throughout the time that the Michigan case was pending AIT continued to use and promote the name "Ameritech" and received no notice or communication from plaintiff. Millard was confident that AIT would be successful in defending the Michigan action because the businesses of the parties were totally unrelated. He believed the same premise applied to the plaintiff in the case at bar and that the plaintiff must have received similar advice and was abandoning its claim. Since the Michigan case was the only legal challenge to the use of the name "Ameritech" and the belief that the plaintiff in the present case had no objection to the use of the name, the Michigan case was settled. In November 1983 AIT issued approximately 100 million shares of common stock to 2.5 million shareholders. Each share includes the name American Information Technologies Corporation and Ameritech. The stock was issued at a time when it was believed that all legal challenges had been resolved especially since plaintiff had been silent. Plain-

tiff filed this action on December 13, 1984, six months after learning of the use of the name "Ameritech" by AIT. By this time the Michigan case was settled. Further prejudicial reliance in addition to issuance of stock and the settling of the Michigan case resulted from plaintiff's delay in taking action. Defendant invested over 2.5 million in advertising; spent hundreds of thousands more putting the name "Ameritech" on trucks, buildings, equipment, stationary, business cards, phone books, promotional materials and other items necessary to conduct the telephone business. Also more than half a dozen subsidiaries using the name "Ameritech" were incorporated.

Plaintiff knew that the name "Ameritech" was going to be used and knew or should have known that large expense would be incurred to prepare for the name change. Yet plaintiff allowed six months to pass before acting. Meanwhile defendant was carrying on with whatever it needed to do to achieve its objective. The Court finds that six months is an unreasonable delay under the circumstances of this case and that the delay resulted in prejudicial reliance by defendant.

■ The defense of laches is available as an equitable defense capable of barring injunctive relief. The decision of what relief, if any, is barred depends on the circumstances of each case. *Tandy Corp. v. Malone and Hyde, Inc., supra.* In order to be successful in a trademark infringement or unfair competition action, the plaintiff must show a likelihood of confusion as to the source of origin. *Frisch's Restaurants, Inc. v. Elby's Big Boy,* 670 F.2d 642 (6th Cir.1982) *cert. denied* 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982). *Induct-O-Matic Corp. v. Inductotherm Corp.,* 747 F.2d 358 (6th Cir.1984). The Sixth Circuit has set forth factors to help determine whether a likelihood of confusion exists. *Frisch's Restaurants, Inc. v. Elby's Big Boy, supra, Induct-O-Matic Corp. v. Inductotherm Corp., supra.* These are: (1) strength of plaintiff's mark;

(2) similarity of the marks; (3) evidence of actual confusion; (4) marketing channels used; (5) likely degree of purchaser care; (6) defendants intent in selecting the market and (7) likelihood of expansion of the product lines. The circumstances as to each factor is a factual issue but the final determination of likelihood of confusion based on those factors is a legal conclusion. *Frisch's Restaurant, Inc. v. Elby's Big Boy, supra. Induct-O-Matic Corp.*

Plaintiff is primarily engaged in the oil reclamation business. It also sells new lubricants and analytical services which is related to materials testing. Defendant is involved in telecommunications and information handling. It provides telephone service, sells telephone equipment and sells telephone directory advertising. There is no doubt that the two companies do not compete nor are their products and services remotely related. It has been held that when goods and services are totally unrelated and non-competing there can be no infringement because confusion is unlikely. *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir.1979).

Likelihood of confusion is also not found when the factors listed above are considered.

### Strength of the Mark

The strength of the mark is important in determining what protection it should receive; the stronger the mark the greater the protection it will be afforded. *AMF, Inc. v. Sleekcraft Boats, supra.* Strength refers to the distinctiveness of the mark or its tendenacy to identify the goods sold under the mark as coming from a particular source. *McGregor-Doniger, Inc. v. Drizzle, Inc.,* 599 F.2d 1126 (2nd Cir.1979). The name "Ameritech" is not at all related to the identify of plaintiff's goods or services. It has been admitted by plaintiff's president that plaintiff's name is not well known. Many other businesses use the name Ameritech on a variety of different goods and services. Plaintiff's mark is weak and is not entitled to the strongest trademark protection.

### Similarity of the Marks

The test under this factor is whether the similarity of the mark is likely to provide confusion. *McGregor-Doniger, Inc. v. Drizzle, Inc., supra, WLWC Centers, Inc. v. Winners Corp.,* 563 F.Supp. 717 (M.D. Tenn.1983).

Although the marks are applied the same, they have a different appearance. Defendant also has its full name below the word Ameritech. Defendant uses an angled block type set with a flash of light in the "A" and a line of light through the remaining letters. Plaintiff uses the letters "A" and "T" combined to resemble a star. It has the name Ameritech printed next to it and its address underneath the name. The marks are quite dissimilar. Defendant's mark cannot possibly be mistaken as being related to plaintiff or vice-versa.

### Evidence of Actual Confusion

Plaintiff has presented some evidence of confusion. Telephone calls have been received by plaintiff from persons trying to reach the phone company. Letters to officers of defendant corporation and job applications have also been received. Several of plaintiff's salesmen have had difficulties since the defendant corporation was formed. However the confusion was not as to the source of products but mostly misdirected correspondence and customer inquiries. Evidence by way of depositions of customers shows no confusion, at least not to the source of plaintiff's products and services.

### Marketing Channels Used

Defendant advertises in major newspapers throughout the country, in national magazines and on television, the primary purpose being to inform the public of its communication business. Plaintiff's advertising is not nearly as extensive. It consists of mailings to prospective customers describing plaintiff's oil reclamation products and services, listings in the local Yellow Pages Telephone Directory and buyers

guides and appearances at tradeshows. The parties advertising appears in different places and is directed to different groups. The advertising describes the respective products and services leaving little chance for confusion.

### Likely Degree of Purchaser Care

Plaintiff's purchasers most likely exercise a higher degree of purchaser care. Only certain persons with a particular type of need for oil reclamation and its related services would be interested in the plaintiff's company. Those persons are usually experienced buyers of the type of products and services offered by plaintiff. When selling new products or offering analytical services, plaintiff's salesmen make numerous visits to a potential customer. Most orders are grouped in $1000 to $5000 range. The smallest are in the $400 category and the largest single order would not be above $12,000. The higher the value of a product the more careful the typical purchaser can be expected to be. The average purchaser of an expensive product will spend more time examining different products and determining the source or manufacturer than one purchasing an inexpensive item. *Fisher Stoves Inc. v. All Night Stove Works*, 626 F.2d 193 (1st Cir. 1980), *McGregor or Doniger, Inc. v. Drizzle, Inc., supra.*

### Defendant's Intent

The intent factor is concerned with whether defendant deliberately chose the name "Ameritech" to palm off its products and services as those of plaintiff. There is no evidence that defendant chose its name in order to take advantage of plaintiff's goodwill. Defendant uses the name "Ameritech" in five states. Plaintiff is relatively unknown in those states, including its home state of Ohio. There is little likelihood that defendant selection of the name "Ameritech" is related to plaintiff.

### Likelihood of Expansion of Products Lines

The present product lines of the parties are completely unrelated. The evidence shows that defendant has no plans to expand its products and services beyond telecommunications and information handling. In fact the consent decree which caused defendant's divestiture from AT & T restricts it from entering into any other type of business. Plaintiff's president testified that his firm had examined expansion but none of the areas mentioned were related to defendant's type of business.

### Conclusion

No single factor can be regarded as determinative. *McGregor-Doniger, Inc. v. Drizzle, Inc. supra.* Plaintiff mark is not very strong, the products and services are unrelated and noncompetitive, the trademarks are dissimilar despite the similar name, little confusion exists as to the source of plaintiff's products and services, there was no intent to take advantage of plaintiff's name, purchasers are likely to use a high degree of care in purchasing plaintiff's products, different marketing channels are used and the parties are not going to expand into related product lines. The conclusion is there is no likelihood of confusion which is required for plaintiff to be successful in this trademark infringement litigation. As previously discussed laches may not be a complete bar to injunctive relief. However, since the Court finds that there is no likelihood of confusion plaintiff's claim for relief must be DENIED.

Accordingly, defendant's motion for summary judgment is GRANTED as to the defense of estoppel by laches and its contention that no likelihood of confusion exists.

IT IS SO ORDERED.