AMERITECH, INC., an Ohio Corporation, Plaintiff-Appellant,

v.

AMERICAN INFORMATION TECHNOLOGIES CORPORATION, a Delaware Corporation, d/b/a Ameritech, Defendant-Appellee.

No. 85–3408.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 10, 1986.

Decided Feb. 12, 1987.

Rehearing Denied April 9, 1987.

Ray L. Weber, Lead Counsel (argued), Edwin W. (Ned) Oldham, Oldham, Oldham & Weber Co., L.P.A., Akron, Ohio, for plaintiff-appellant.

Stanley L. Ferguson, Helen E. Witt, Robert G. Krupka (argued), Alexander F. MacKinnon, Chicago, Ill., for defendant-appellee.

Before KEITH * and MARTIN, Circuit Judges, and SPIEGEL,** District Judge.

---

* The Honorable Damon J. Keith, United States Circuit Judge, presided at the oral argument held on February 10, 1986, but recused himself before a decision was reached. Judge Spiegel has concurred in Judge Martin's opinion and it is thus the judgment of the case. *See* 6th Cir.R. 3(a).

BOYCE F. MARTIN, Jr., Circuit Judge.

Ameritech, Inc. of Bedford Heights, Ohio, appeals a summary judgment in favor of American Information Technologies Corporation, in a trademark infringement action based on Ohio law. The district court held that the infringement claims of Ameritech, Inc. were barred by the defense of laches and that the claims failed under both "related" and "unrelated goods" analyses. The district court did not consider Ameritech's dilution of trademark and reverse confusion of sponsorship claims. We find the laches defense inapplicable. Also, because trademark dilution claims are cognizable under Ohio law and because we think an Ohio court, if presented with the issue, would recognize reverse confusion claims, we reverse and remand for consideration of those claims.

## I. Facts

Ameritech, Inc., plaintiff below, is a small Ohio corporation that reclaims industrial oils. It collects used oil and lubricants, removes contaminants, replenishes and then returns the oil products to its customers. The company also develops and blends new industrial oils, provides laboratory analysis and consulting services, and sells or rents lubricant containers. Ameritech, Inc. has operated one plant since 1979 in Bedford Heights, Ohio. Total sales in the first five years approached two million dollars and the company turned its first profit in 1984. Plaintiff's 1981 long term plan called for patents, licensees, "going public," building plants outside Ohio, and national advertising. Today, while continuing with efforts to achieve these goals, it still makes 90% of its sales in Ohio.

In December 1979, plaintiff registered under Ohio law the trade name "Ameritech." It also adopted an unregistered

** The Honorable S. Arthur Spiegel, United States District Judge for the Southern District of Ohio, sitting by designation.

trademark in a star configuration of the letters "A" and "T" with "Ameritech" printed next to the logo and its address under the name. Plaintiff has used this trade name and mark since 1979 but has not sought federal registration for either. During plaintiff's first five years, promotional expenses for oil reclamation services did not exceed $2,500. Plaintiff's president estimated the company spent a total of $100,000 during that period on advertising for laboratory and related oil services.

Defendant American Information Technologies is headquartered in Chicago and is a holding company for five Bell telephone companies which provide local telephone service in five midwestern states. Each of the local Bell companies owns a subsidiary that sells telephone equipment. Additionally, defendant owns a number of other subsidiaries whose functions vary from selling advertising to research in telecommunications. Defendant has $17 billion in assets and its annual profits exceed $1 billion.

Defendant has tried to create an image of state-of-the-art communications technology. It sought a name that would not limit the markets it might later choose to enter and which would establish it as more than just a telephone company. In June 1983, defendant announced its selection of the "Ameritech" trade name. Defendant asserts that it adopted the name as a contraction of its formal corporate name, American Information Technologies. The corresponding trademark consisted of "Ameritech" in angled block type with a star in the "A" and a streak through the remaining letters.

The day following the announcement of the new trade name, defendant advertised the new name in newspapers across the country, including *The Cleveland Plain Dealer.* In addition to carrying defendant's full page advertisement on June 17, 1983, *The Plain Dealer* also printed an article on defendant's debut under the trade name "Ameritech". Plaintiff's president first learned of defendant's adoption of "Ameritech" from the article and advertisement in the Cleveland newspaper. He contacted a *Plain Dealer* reporter that day to object to defendant's use of his company's trade name, complaining of customer confusion caused by the advertisement. He informed the reporter that plaintiff's attorneys would contact defendant the following Monday. *The Plain Dealer* published a story on the parties' overlapping use of "Ameritech" on June 18. The article mentioned the potential for customer confusion and recounted defendant's intention to apply for federal registration of "Ameritech" and for state registration in Illinois, Indiana and Wisconsin, but not in Ohio or Michigan. The article also mentioned plaintiff's declaration that it would contact defendant.

Plaintiff did not contact defendant before filing this action on December 14, 1983. Plaintiff's president claims that he concluded from the June 18th article that defendant would neither seek Ohio registration nor use "Ameritech" in Ohio, and defendant did not contact plaintiff during the six months between the announcement of the trade name and the commencement of this suit. In September 1983, however, defendant launched a national advertising campaign. It also issued "Ameritech" stock certificates and placed its trademark on its business paraphernalia and equipment. At one point, defendant unsuccessfully attempted to register "Ameritech" in Ohio; the Ohio Registry rejected the application and instructed defendant to first seek plaintiff's consent to use the trade name. Defendant did not do so.

In its complaint, plaintiff alleged that defendant had violated its common law rights in the "Ameritech" trade name and trademark. Plaintiff submitted a number of affidavits attesting to the confusing effect of defendant's advertising campaign on plaintiff's business: plaintiff's salesmen encountered increased difficulty in securing sales interviews because potential customers confused plaintiff with defendant and discarded plaintiff's mail; plaintiff's officials incurred antagonism from established customers who believed plaintiff had

been sold to defendant; plaintiff's president had to reassure smaller customers and stockholders that plaintiff had not become a subdivision of defendant.

After extensive discovery defendant filed a motion for summary judgment arguing: (1) that the claims were barred by estoppel by laches; (2) that there was no likelihood of confusion because the parties' businesses are totally unrelated; and (3) that there was no likelihood of confusion even under a "related goods" analysis. The district court granted defendant's motion on each ground. *Ameritech, Inc. v. American Information Technologies Corporation,* 609 F.Supp. 611 (N.D.Ohio 1985). The district court held that plaintiff's action was barred by estoppel by laches because it unreasonably delayed filing a complaint for six months, which resulted in prejudicial reliance by defendant. It also concluded that there was no likelihood of consumer confusion between the source of plaintiff's oil reclamation services and the source of defendant's telecommunications products and services. It held that there could be no confusion and therefore no infringement where the parties' goods are unrelated and noncompetitive. The court then determined that plaintiff had also failed to show a likelihood of confusion for related but non-competing goods. The district court did not address the reverse confusion or dilution arguments.

## II. Law & Analysis

This case is brought under diversity jurisdiction and, because Ameritech, Inc. did not file for federal trademark protection, is based on Ohio law. The substantial overlap of state and federal trademark law, however, often obscures the necessity of determining whether state or federal law applies. *International Order of Job's Daughters v. Lindeburg and Co.,* 633 F.2d 912, 916 (9th Cir.1980), *cert. denied,* 452 U.S. 941, 101 S.Ct. 3086, 69 L.Ed.2d 956 (1981). More particularly, because Ohio courts use federal as well as state trademark law, this Court may also do so. *Jewel Companies, Inc. v. Westhall Co.,* 413 F.Supp. 994, 999 (N.D.Ohio 1976), *aff'd,* 575

F.2d 1176 (6th Cir.1978). In analyzing the issues presented by this case, we deal first with the laches ruling and then turn to the trademark infringement claims.

### A. Laches Defense

■ The district court held that the defense of laches applied because plaintiff's six month delay between defendant's announcement of its adoption of "Ameritech" and plaintiff's filing of its trademark action, was unreasonable in light of defendant's large advertising expenses. We disagree. Plaintiff is entitled "to some latitude to assess both the impact of another's use of an allegedly infringing trademark as well as the wisdom of pursuing litigation on the issue." *Tandy Corp. v. Malone & Hyde, Inc.,* 769 F.2d 362, 366, *reh'g denied,* 777 F.2d 1130 (6th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 2277, 90 L.Ed.2d 719 (1986). As we said in *Tandy,* "there is a strong presumption that plaintiff's delay . . . is reasonable", so long as the analogous statute of limitations has not elapsed. *Id.* at 366. In this case, the analogous Ohio law is the two-year statute of limitations for injury to persons and personal property, Ohio Rev.Code § 2305.10, and plaintiff's six month delay falls well within its bounds.

■ Moreover, there are no unusual circumstances nor any affirmative estoppel conduct by plaintiff to overcome the strong presumption that laches do not bar an action before the running of the analogous statute of limitations. Prior to spending large sums of money to acquire the trade name "Ameritech," defendant was well aware that the use of plaintiff's trade name in Ohio would be problematic; it learned this from both the June 18, 1983, *Plain Dealer* article and from the Ohio Trademark Registry, which instructed defendant to seek plaintiff's permission to use "Ameritech." Laches will not bar injunctive relief where a defendant adopted the trade name with knowledge of a plaintiff's rights and objections. *Induct-o-Matic Corp. v. Inductotherm Corp.,* 747 F.2d 358, 367 (6th Cir.

1984) (quoting *Hanover Star Milling Co. v. Metcalf,* 240 U.S. 403, 419, 36 S.Ct. 357, 362–63, 60 L.Ed. 713 (1916)). Finally, the fact that defendant spent a lot of money advertising under "Ameritech" does not by itself support a laches defense. "The law does not permit a court to refuse to reach the merits of a case by applying laches because a party is capable of spending large sums in the pursuit of the course of conducts that is alleged to constitute the wrong." *Tandy Corp.,* 777 F.2d at 1131.

## B. Trademark Claims

Although trademark protection may have had its start in common law as an action in fraud, over the past one hundred fifty years it has come to focus also on protecting property interests in trademarks themselves. This shift is the result of the recognition of the purposes trademarks serve in the modern, impersonal economy. They act as a means of identifying a product as coming from or being associated with a particular, although anonymous, source, and inducing subsequent purchases by consumers. As a commentator pointed out sixty years ago:

> The fact that through his trademark the manufacturer or importer may "reach over the shoulder of the retailer" and across the latter's counter straight to the consumer cannot be over-emphasized, for therein lies the key to any effective scheme of trademark protection.... [A trademark is] not merely the symbol of good will but often the most effective agent for the creation of good will, imprinting upon the public mind an anonymous and impersonal guaranty of satisfaction, creating a desire for further satisfactions. The mark actually *sells* the goods.

Schecter, *The Rational Basis of Trademark Protection,* 40 Harv.L.Rev. 812, 818–19 (1927) (emphasis original).

 Thus, trademark law now pursues two related goals—the prevention of deception and consumer confusion, and, more fundamentally, the protection of property interests in trademarks. As a means of

achieving these goals, the common law has developed a number of types of infringement actions. The first and most common is "palming off." This occurs between directly competing goods and the confusion is over their source of origin. Similar marks on these goods can cause the consumer to mistakenly buy the infringing defendant's product as the plaintiff's; the defendant tries to "palm off" his goods as the plaintiff's. *See, e.g., Seven-Up Co. v. Get Up Corp.,* 340 F.2d 954 (6th Cir.), *cert. denied,* 382 U.S. 901, 86 S.Ct. 235, 15 L.Ed.2d 155 (1965).

A second kind of infringement is confusion of sponsorship, which occurs where the goods do not directly compete. In this situation, the goods are unrelated enough that no inference arises that they originated from the same source, but the similarity of the trademarks erroneously suggests a connection between the sources; the defendant seeks to capitalize on the plaintiff's goodwill and established reputation. *See, e.g., Conan Properties, Inc. v. Conans Pizza, Inc.,* 752 F.2d 145, 150 (5th Cir.1985) (ordinary consumer might well believe defendant restaurant was affiliated with owners of fictional character "Conan The Barbarian" through licensing).

A third kind of infringement is reverse confusion of sponsorship. A reverse confusion claim differs from the stereotypical confusion of source or sponsorship claim. Rather than seeking to profit from the goodwill captured in the senior user's trademark, the junior user saturates the market with a similar trademark and overwhelms the senior user. The public comes to assume the senior user's products are really the junior user's or that the former has become somehow connected to the latter. The result is that the senior user loses the value of the trademark—its product identity, corporate identity, control over its goodwill and reputation, and ability to move into new markets. *See, e.g., Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.,* 561 F.2d 1365, 1371–72 (10th Cir.1977), *cert. dismissed,* 434 U.S. 1052, 98 S.Ct. 905, 54 L.Ed.2d 805 (1978); *Plus*

*Products v. Plus Discount Foods, Inc.*, 722 F.2d 999, 1003–04 (2d Cir.1983). *See also International News Service v. Associated Press*, 248 U.S. 215, 247, 39 S.Ct. 68, 75, 63 L.Ed. 211 (1918) (Holmes, J., concurring) ("The ordinary case, I say, is palming off the defendant's product as the plaintiff's; but the same evil may follow from the opposite falsehood,—from saying, whether in words or implication, that the plaintiff's product is the defendant's.... [T]he principle that condemns one condemns the other.").

A fourth kind of infringement is dilution. Under this theory, an infringement can occur even where the products are non-competing and no confusion is possible. Rather than focusing on consumer confusion, the dilution theory seeks to protect the senior user's interests in the trademark. Dilution occurs when the senior user possesses a distinctive mark, the junior use of which might not, in the short run, result in loss of sales or loss of control over reputation, but might cause a gradual diminution in the mark's distinctiveness, effectiveness and, hence, value. This kind of infringement corrodes the senior user's interest in the trademark by blurring its product identification or by damaging positive associations that have attached to it. *See* 3A R. Callmann, *Unfair Competition, Trademarks & Monopolies* § 21.11, at 33–34 (4th ed. 1981); 2 J. McCarthy, *Trademarks and Unfair Competition* § 24.13, at 215 (2d ed. 1984). *See, e.g., Vogue Co. v. Thompson-Hudson Co.*, 300 Fed. 509 (6th Cir.1924), *cert. denied*, 273 U.S. 706, 47 S.Ct. 98, 71 L.Ed. 850 (1926); *Pro-Phy-Lac-Tic Brush Co. v. Jordan Marsh Co.*, 165 F.2d 549, 553 (1st Cir.1948).

The district court in the case at hand asserted that there could be no infringement where the goods are unrelated and non-competing and as a result did not evaluate plaintiff's reverse confusion and dilution claims. Dilution claims, however, are cognizable under Ohio's common law. *See, e.g., National City Bank of Cleveland v. National City Window Cleaning Co.*, 180 N.E.2d 20 (Ohio App.1962), *rev'd on other grounds*, 174 Ohio St. 510, 190 N.E.2d 437 (1963) (banking concern's trade name diluted by window cleaning business' use of similar name); *Guild & Landis, Inc. v. Liles & Landis Liquidators, Inc.*, 2 Ohio Misc. 169, 207 N.E.2d 798 (C.P.1959) (insurance business' trade name diluted by appliance company's use). As the Ohio Supreme Court observed in *National City Bank*, 174 Ohio St. at 513–14, 190 N.E.2d at 439 (citation omitted):

> [T]he use of the same or very similar names in entirely unrelated businesses may in and of itself prove injurious to the originator of the name. Such practice operates to whittle away and disperse in the mind of the public the identity of the name in relation to the one who invented it. The more distinctive the name the deeper its impression on the public consciousness and the greater the need to protect it against indiscriminate invasion.

*See also Hugo Stein Cloak Co. v. S.B. Stein & Son, Inc.*, 58 Ohio App. 377, 16 N.E.2d 609 (Ct.App.1937); *Henry Furnace Co. v. Kappelman*, 91 Ohio App. 451, 108 N.E.2d 839 (Ct.App.1952).

Plaintiff in this case contends its "Ameritech" trade name and mark have been diluted by defendant's use and complains that it has lost effective business use of that name and mark, its formerly untarnished reputation, and exclusive association with its name. As the quotation from the Ohio Supreme Court suggests, to succeed with its dilution claim, plaintiff must have a distinctive mark. Plaintiff's trademark need not be nationally famous, however, for a mark that is strong in a particular geographical or product area also deserves protection. *See, e.g., Dreyfus Fund Inc. v. Royal Bank of Canada*, 525 F.Supp. 1108 (S.D.N.Y.1981) (Dreyfus Fund "lion" logo a strong mark in the financial field and diluted by another's use in the same field). Plaintiff is entitled to consideration of its dilution claim.

As for reverse confusion claims, Ohio has yet to consider them. Without an Ohio statute or ruling directly on point, we must

examine the policies of Ohio law to ascertain what an Ohio court would do if presented with such a claim. Ohio statutory law and trademark decisions manifest a concern to prevent confusion and to protect property interests of senior users in their trademarks, regardless of whether the parties compete. *See Younker v. Nationwide Mutual Ins. Co.*, 175 Ohio St. 1, 6, 191 N.E.2d 145, 149 (1963); *National City Bank*, 174 Ohio St. at 514, 190 N.E.2d at 439; Ohio Rev.Code § 4165.02 (a plaintiff "need not prove competition between the parties" in a trademark action under the deceptive practice act). As the Ohio Supreme Court has explained, "the trend ... has been to broaden the scope of protection to established and reputable business enterprises to prevent the appropriation and exploitation of their distinctive names by others, even though such others are engaged in dissimilar activities." *National City Bank*, 174 Ohio St. at 513, 190 N.E.2d at 439. *See also Guild & Landis, Inc.*, 2 Ohio Misc. at 174, 207 N.E.2d at 801 ("It is obvious that a person other than a competitor can damage the goodwill and reputation of a business; it is not always too material whether such persons derive a benefit that would have accrued to the damaged business."). Ohio thus grants broad trademark protection to senior users.

■ Not only is Ohio generous in protecting trademarks, but recognizing a reverse confusion claim is not a big step. Ohio has long protected trademark owners from confusion of source (i.e., "palming off") and confusion of sponsorship. The same interests—protecting property interests in trademarks and preventing consumer confusion—are at stake in a reverse confusion case; the senior user's interests in the trademark can be suffocated by the junior user who takes the trademark as his own; and consumers can be confused that the senior user's products come from the junior user or that the senior has become associated with the junior. To borrow the words of Justice Holmes, "the principle that condemns one condemns the other." *International News Service*, 248 U.S. at 247, 39 S.Ct. at 75. We consequently conclude that the Ohio courts would recognize a reverse confusion claim.

■ In the case before us, plaintiff asserts that its name and mark have obtained secondary meaning in its field. In this era of corporate diversification, and on this record which shows defendant intends to expand into other high-technology markets, we cannot say the ordinarily prudent consumer would not assume defendant bought plaintiff as a subsidiary and is sponsoring plaintiff's products. Plaintiff is therefore entitled to a consideration of its reverse confusion of sponsorship claim.

Although the district court did not evaluate the reverse confusion and dilution claims, it did make some findings that could have a bearing on these claims. Using a series of factors listed in *Frisch's Restaurant, Inc. v. Elby's Big Boy, Inc.*, 670 F.2d 642, 648 (6th Cir.), *cert. denied*, 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982), the district court found that there was no likelihood of confusion. The factors included: (1) the strength of plaintiff's trademark; (2) the relatedness of the goods; (3) the similarity of the trademarks; (4) the evidence of actual confusion; (5) the marketing channels used; (6) the likely degree of purchaser care; (7) the defendant's intent in selecting the trademark; and (8) the likelihood of expansion of product lines. A district court's factual findings on evidence supporting these factors focusing on the "likelihood of confusion" issue are "subject to the clearly erroneous rule of appellate review. However, the *evaluation* of those findings is a question of law subject to *de novo* examination by the appeals court." *Frisch's Restaurant, Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1264 (6th Cir.1985) (citations omitted) (emphasis original).

■ The district court accurately observed that the stronger a trademark, the greater the protection afforded, but then concluded that plaintiff's mark was not strong. The court reasoned that "Ameritech" does not identify plaintiff's goods or services, that it is not well known, and that

many other businesses use the same name. *Ameritech, Inc.*, 609 F.Supp. at 614. This analysis does not go far enough, however. A mark might be weak in the national market, but might still be strong in the senior user's geographical and product area and thus deserving of protection. *See Dreyfus Fund Inc.*, 525 F.Supp. at 1114; *Jewel Companies, Inc.*, 413 F.Supp. at 1000 ("within those areas in which a weak mark is shown to have secondary meaning, it is entitled to protection if there is proof of a likelihood of confusion"). Given that plaintiff has exclusive registration of "Ameritech" in Ohio, we find it difficult to accept the district court's finding that plaintiff's name is weak in its own geographical and product area.

The district court also concluded that the parties' trademarks are dissimilar because they use different typeset and design. *Ameritech, Inc.*, 609 F.Supp. at 614. We disagree. Both parties use "Ameritech" in their trademarks, they spell the word the same way, and they both use variations of a star logo. The trademarks are of course not exactly the same, but they do bear strong resemblances.

Judgment reversed.