JET, INC., Plaintiff–Appellant,

v.

SEWAGE AERATION SYSTEMS,
Defendant–Appellee.

No. 97–3677.

United States Court of Appeals,
Sixth Circuit.

Argued July 31, 1998.

Decided Jan. 6, 1999.

As Amended on Denial of Rehearing
and Suggestion for Rehearing
En Banc Feb. 25, 1999.*

* Judge Ryan would not have altered the court's original decision.

Thomas H. Odom (argued and briefed), Roger P. Furey (briefed), Arter & Hadden, LLP, Washington, D.C., for Appellant.

Jeffrey D. Harty (argued and briefed), Edmund J. Sease (briefed), Zarley, McKee,

Thomte, Voorhees & Sease, Des Moines, IA, for Appellee.

Before: JONES, RYAN, and MOORE, Circuit Judges.

## OPINION

MOORE, Circuit Judge.

Jet, Inc. ("Jet") appeals the magistrate judge's entry of summary judgment for Sewage Aeration Systems ("SAS") on Jet's federal claims of trademark infringement and false designation of origin, and state claims of trademark infringement, unfair competition, and dilution. Jet also appeals the magistrate judge's refusal to grant leave for Jet to amend its complaint to add claims for trademark dilution under federal law and for cancellation of SAS's trademark. Because the parties' marks are not sufficiently similar to warrant trial on Jet's trademark claims, and because amendment of Jet's complaint would have been futile, we affirm the grant of summary judgment to SAS.

## I. BACKGROUND

Both Jet and SAS manufacture sewage and waste-water treatment devices for homes. Jet began doing business in the 1950s under the name Jet Aeration, and in 1969 it officially changed its name to Jet, Inc. It first registered the trademark JET in 1969. SAS's product is sold under the trademark AEROB–A–JET, which SAS registered in 1992, although it has used the mark since 1971. According to Jet, SAS first went into competition with Jet when SAS began making an AEROB–A–JET device available for home use in 1991. Jet Br. at 4.

Each party makes a product that uses a spinning shaft to create vacuums in waste water, thereby drawing ambient air down into the water. The presence of oxygen encourages the proliferation of aerobic bacteria, which consume toxic materials. Jet's product is available as part of a complete package, with a specially fitted septic tank. The cost to the homeowner varies widely but is approximately $2,600 or more for the entire package, including installation. SAS's device is usually added to an existing septic tank, although it can also be installed as part of a new system. The homeowner's cost is $800 to $900.

Jet brought this action against SAS in December 1994, claiming trademark infringement under 15 U.S.C. § 1114 (Count One), false designation of origin under 15 U.S.C. § 1125(a) (Count Two), common law trademark infringement and unfair competition (Count Three), and common law dilution of a trademark (Count Four). Joint Appendix at 294–96 (Sec.Am.Compl.¶¶ 21–34). Counts Three and Four are governed by Ohio law. The parties consented to present their case to a magistrate judge and appeal directly to this court rather than to a district judge. See 28 U.S.C. § 636(c).

SAS challenged the district court's personal jurisdiction and did not file its answer until October 1995. In June 1996, Jet sought to amend its complaint to make technical corrections; to add a count for cancellation of SAS's trademark; and to add a count for trademark dilution under 15 U.S.C. § 1125(c), which went into effect in January 1996. While permitting one technical correction, the magistrate judge otherwise denied the motion to amend without explanation.

On SAS's motion for summary judgment, the magistrate judge held that simultaneous use of the JET and AEROB–A–JET marks was unlikely to cause confusion in the marketplace, thereby disposing of Counts One, Two, and Three of Jet's complaint. See Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr., 109 F.3d 275, 288 (6th Cir.1997) (noting that trademark infringement under Ohio common law, like trademark infringement and false designation of origin under federal law, requires proof of likelihood of confusion). The magistrate judge also found that SAS was entitled to judgment as a matter of law on Count Four, the common law claim of trademark dilution, and therefore granted SAS's motion for summary judgment on all counts. We have jurisdiction over Jet's timely appeal. See 28 U.S.C. § 636(c)(3).

## II. ANALYSIS

### A. LIKELIHOOD OF CONFUSION

 To determine whether simultaneous use of two trademarks is likely to cause confusion, we consider the following factors:

1. strength of the plaintiff's mark,
2. relatedness of the goods or services,
3. similarity of the marks,
4. evidence of actual confusion,
5. marketing channels used,
6. likely degree of purchaser care,
7. the defendant's intent in selecting its mark, and
8. likelihood of expansion of the product lines.

*See Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir.), *cert. denied*, 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982).

■ Likelihood of confusion is a mixed question of fact and law. *See Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir. 1988). After a bench trial, we review a trial court's underlying factual findings for clear error but review de novo whether these facts indicate a likelihood of confusion. *See id.* SAS argues that we should therefore defer to the magistrate judge's finding on each factor unless the judge was clearly erroneous. In essence, SAS argues that the magistrate's judge decision should be treated as if it were the outcome of a trial. SAS misunderstands the nature of summary judgment. On SAS's motion for summary judgment, the magistrate judge could decide the likelihood of confusion issue only if there were no material facts in dispute. We review de novo both whether that standard was met and whether the magistrate judge drew the correct legal conclusion from the undisputed facts. *See Daddy's Junky Music*, 109 F.3d at 279–80.

■ The magistrate judge was clearly correct in his resolution of several of the *Frisch* factors. It was correct to classify the parties' devices as "related" under the broad standard used to decide whether two trademarks are competing in the same market (factor two). *See, e.g., Wynn*, 839 F.2d at 1187 (finding that car wash service and seller of car care products "fundamentally are selling the same thing—a clean car"); *Little Caesar Enters., Inc. v. Pizza Caesar, Inc.*, 834 F.2d 568, 571 (6th Cir.1987) (finding that sit-down restaurant and carry-out operation sold "quite closely related" goods and services). Similarly, with respect to factor five,

it is clear from the record that both parties use similar marketing channels and that there is a possibility of overlap. Because Jet has offered no evidence that SAS intended to cause confusion or to infringe on Jet's rights, factor seven is irrelevant. *See Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1121 (6th Cir.1996).

■ With respect to the first factor, Jet is entitled to a presumption that its mark is strong. Because Jet's trademark was registered for five years without successful challenge, it has "incontestable" status. *See* 15 U.S.C. § 1065. While courts normally evaluate the strength of a trademark in terms of where the mark fits along a spectrum ranging from "(1) generic ... and (2) merely descriptive to (3) suggestive and (4) arbitrary or fanciful," *Induct–O–Matic Corp. v. Inductotherm Corp.*, 747 F.2d 358, 362 (6th Cir. 1984), "[a]n infringement action may not be defended on the grounds that a mark is merely descriptive, if that mark has met the requirements of incontestability." *Wynn*, 839 F.2d at 1187 (citing *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985)). While SAS has offered evidence that Jet's mark has been weakened by widespread use of similar marks, the evidence is not sufficient to rebut as a matter of law the presumption conferred by incontestable status. Therefore, because this case is before us on SAS's motion for summary judgment, we accept Jet's claim that its mark is famous in its field.

The magistrate judge was also correct to find that purchasers of Jet and SAS's products are likely to exercise a great deal of care (factor six).

Generally, in assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution. However, when a buyer has expertise or is otherwise more sophisticated with respect to the purchase of the services at issue, a higher standard is proper. Similarly, when services are expensive or unusual, the buyer can be expected to exercise greater care in her purchases. When services are sold to such

buyers, other things being equal, there is less likelihood of confusion. *Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1111 (6th Cir.1991). Most purchasers of the parties' products are contractors, who are experts in their fields and therefore less likely to be confused than lay people. In addition, the high cost of either product—and of installing a septic system in general—is likely to induce great care even in the non-expert homeowner.

■ We agree with Jet that the magistrate judge erred in concluding that the potential for expanded competition between the parties (factor eight) was irrelevant. We have held that this factor is relevant even when the parties are already in competition, since increased overlap in product lines or geographic territory could increase the likelihood of confusion. *See Champions*, 78 F.3d at 1121–22 (holding that expansion was relevant because it could lead to further actual confusion). We also believe that the magistrate judge gave too much weight to Jet's inability to produce evidence of actual confusion (factor four). However, these factors are less significant than factor three, the similarity of the marks. Jet's infringement claims ultimately fail because JET and AEROB–A–JET simply are not similar enough to cause confusion in the marketplace.

■ In determining the degree of similarity, we examine "the pronunciation, appearance and verbal translation of conflicting marks." *Wynn*, 839 F.2d at 1188. This determination is not based on side-by-side comparison but on whether "the appearance of the marks is similar enough that it may confuse customers who do not have both marks before them but who may have a general, vague, or even hazy, impression or recollection of the other party's mark." *Id.* (internal quotation marks omitted). Although examination of the components of each mark may be helpful, the determination of similarity is made on the basis of the marks in their entireties. We have endorsed the "anti-dissection rule," which serves to remind courts not to focus only on the prominent features of the mark, or only on those features that are prominent for purposes of the litigation, but on the mark in its totality. *See Little Caesar*, 834 F.2d at 571–72 (holding, despite prominent component shared by PIZZA CAESAR USA and LITTLE CAESARS, that differences in sound and appearance made them dissimilar).

We have previously considered several cases involving a defendant whose mark contains all or a significant part of the plaintiff's mark. Jet relies primarily on *Daddy's Junky Music* and *Induct–O–Matic*. *Daddy's Junky Music* held that the defendant's mark, BIG DADDY'S FAMILY MUSIC CENTER, was not sufficiently distinct from the plaintiff's DADDY'S to justify summary judgment, especially in light of the defendant's use of abbreviations such as BIG DADDY'S. The two marks in this case, however, are more distinct than DADDY'S and BIG DADDY'S. The most prominent part of AEROB–A–JET is not the shared term JET but the initial syllables AEROB–A, and there is no indication in the record that SAS or anyone else commonly abbreviates AEROB–A–JET as merely JET. In *Induct–O–Matic*, this court affirmed the district court's finding, after trial, that INDUCTO and INDUCT–O–MATIC were confusingly similar. Again, the marks in this case are more distinctive. The addition of the suffix MATIC adds little meaning to the mark, and MATIC is not so prominent in the pronunciation of INDUCT–O–MATIC that it would readily distinguish the parties' products in the marketplace.

Jet argues that the term AEROB–A is merely descriptive and therefore not eligible for trademark protection. Jet claims that we are therefore obliged, under *Induct–O–Matic*, to delete that portion of the mark when assessing similarity. The comparison would then be between JET and JET. However, while AEROB–A refers to the relationship of SAS's product to aerobic bacteria, it does not merely describe the product; it suggests the idea of bubbling air. AEROB–A in SAS's mark is a distinctive term which is not merely descriptive. It is not appropriate to delete this distinctive portion of SAS's mark when assessing similarity.

JET and AEROB–A–JET are visually and verbally distinct. AEROB–A–JET has four

syllables to JET's one, and the first syllables of AEROB–A–JET are more prominent when the mark is pronounced. Both AE-ROB ard JET are somewhat descriptive of how the parties' devices operate, but neither is generic or merely descriptive of the process. Considering the impression made by the marks as a whole, JET and AEROB–A–JET are not confusingly similar.

In sum, the undisputed facts of this case establish that Jet and SAS are in direct competition, selling related goods through the same marketing channels. However, a reasonable jury could not conclude that the marks JET and AEROB–A–JET are confusingly similar, and the very high degree of care that purchasers in this market—both contractors with the skills and responsibility for installing home sewage treatment systems and homeowners spending hundreds or thousands of dollars to buy or repair such systems—can be expected to exercise eliminates virtually any possibility that SAS's use of AEROB–A–JET will cause confusion.

## B. DILUTION OF JET'S MARK

█ Anti-dilution laws protect a senior user's mark even if the junior user is not a competitor and there is no likelihood of confusion between the two products. To prevail on a dilution claim, the senior user must demonstrate that it has a famous mark and that the junior user's conduct damages the senior's interest in the mark "by blurring its product identification or by damaging positive associations that have attached to it." *Ameritech, Inc. v. American Info. Technologies Corp.*, 811 F.2d 960, 965 (6th Cir.1987) (applying Ohio law). Ohio courts recognize a common law cause of action for dilution. *See id.* (citing *National City Bank of Cleveland v. National City Window Cleaning Co.,* 19 O.O.2d 448, 180 N.E.2d 20 (Ohio Ct.App. 1962), *rev'd on other grounds,* 174 Ohio St. 510, 190 N.E.2d 437 (Ohio 1963)).

The Federal Trademark Dilution Act of 1995, which went into effect in January 1996, provides that possession of a valid federal trademark registration is a complete bar to a dilution claim "under the common law or a statute of a State." 15 U.S.C. § 1125(c)(3). Although SAS possesses a federal trademark

registration for AEROB–A–JET, Jet argues that the federal law does not apply retroactively, and that SAS is therefore liable under Ohio law for violations prior to January 1996. We note that the traditional remedy for dilution is an injunction, not damages, *see* 3 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 24:73 (4th ed.1997), and that there is no Ohio authority suggesting a contrary rule. In addition, the Eighth Circuit has held that § 1125(c)(3) applies even when the request for an injunction is based on the defendant's conduct before January 1996. *See Viacom Inc. v. Ingram Enters. Inc.*, 141 F.3d 886, 890 (8th Cir.1998). Thus, were we to follow *Viacom,* § 1125(c)(3) would provide SAS with a complete affirmative defense to the Ohio anti-dilution claims. However, Jet has sought to add a count for cancellation of SAS's federal trademark registration. If Jet were successful on that claim, SAS would lose its affirmative defense, and Jet could proceed with its Ohio dilution claim. We will therefore consider the merits of the state dilution claim rather than decide the federal statutory retroactivity question.

█ Assuming Ohio courts would allow this cause of action between competitors, we conclude that Jet and SAS's marks are not sufficiently similar to support a finding of dilution. Jet argues that the magistrate judge wrongly used "the same or very similar" as the degree of similarity required for a dilution claim. It points to several Ohio cases enjoining the use of marks referred to as merely "similar." These cases, however, focus on the likelihood of consumer confusion rather than on dilution, and the marks at issue there are arguably "very similar." *See Guild & Landis, Inc. v. Liles & Landis Liquidators, Inc.,* 2 Ohio Misc. 169, 207 N.E.2d 798, 800 (Ohio Com.Pl.1959) (comparing "Guild & Landis" to "Liles & Landis," where "Guild" is pronounced to rhyme with "mild"); *Henry Furnace Co. v. Kappelman,* 91 Ohio App. 451, 108 N.E.2d 839, 844 (Ohio Ct.App.1952) (commenting on comparison of "Lady Esther, Ltd." to "Lady Esther Corset Shoppe, Inc."). Even granting that JET and AEROB–A–JET are similar, Jet's theory would permit it to enjoin the use of a vast number of registered trademarks containing

the word "jet" and used in unrelated industries. The purpose of anti-dilution laws is to provide a narrow remedy when the similarity between two marks is great enough that even a noncompeting, nonconfusing use is harmful to the senior user. Jet's standard for dilution would overwhelm the likelihood of confusion test: a plaintiff could obtain an injunction merely by showing that it had a famous mark similar to the defendant's, without any consideration of the other *Frisch* factors. The degree of similarity required for a dilution claim must be greater than that which is required to show likelihood of confusion. *See* 3 McCarthy § 24:90.1 (noting that states generally require marks in dilution case to be "virtually identical"). Therefore, because JET and AEROB–A–JET are not similar enough even to satisfy the likelihood of confusion test, Jet's state dilution claim must fail.

## C. JET'S MOTION TO AMEND ITS COMPLAINT

██ Rule 15(a) of the Federal Rules of Civil Procedure states that leave to amend "shall be freely given when justice so requires." Although the decision to permit amendment to a complaint after an answer has been filed is committed to the discretion of the trial court, *see General Elec. Co. v. Sargent & Lundy,* 916 F.2d 1119, 1130 (6th Cir.1990), "[t]he thrust of Rule 15 is ... that cases should be tried on their merits rather than the technicalities of pleadings." *Tefft v. Seward,* 689 F.2d 637, 639 (6th Cir.1982). "Abuse of discretion occurs when a district court fails to state the basis for its denial or fails to consider the competing interests of the parties and likelihood of prejudice to the opponent." *Moore v. City of Paducah,* 790 F.2d 557, 559 (6th Cir.1986). "[O]utright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

██ The claims Jet sought to add were so similar to the counts already in its complaint—which we have determined to lack

merit—that the proposed amendment would have been futile. Jet sought cancellation of SAS's trademark, which is necessary to overcome SAS's affirmative defense to Jet's dilution claim, and to make its dilution claim under federal as well as state law. Jet argues that allowing it to amend its complaint would not have prejudiced SAS because the factual basis for the new claims is the same as the basis for its infringement claim. However, on the facts Jet has alleged, the only possible ground for canceling SAS's mark is the claimed likelihood of confusion between JET and AEROB–A–JET. *See* 3 McCarthy §§ 20:53, 20:54 (outlining grounds for cancellation). Our holding on Jet's trademark infringement claim, that there is not a likelihood of confusion, necessarily precludes cancellation of SAS's mark. Similarly, the federal dilution claim would fail because the marks are not sufficiently similar. Although some aspects of this claim would be different under the federal statute than under Ohio common law, we would still require a greater degree of similarity than is needed under the likelihood of confusion test.

██ The futility of amending Jet's complaint would have been appropriate grounds on which to deny the motion to amend. *See Marx v. Centran Corp.,* 747 F.2d 1536, 1550 (6th Cir.1984), *cert. denied,* 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985). Thus, although it was an abuse of discretion for the magistrate judge to "fai[l] to state the basis for [his] denial" of leave to amend, *Moore,* 790 F.2d at 559, this error was harmless.

## III. CONCLUSION

Because there is not a likelihood that the parties' trademarks will be confused in the marketplace, and because Jet has not alleged facts sufficient to support a claim for trademark dilution, we **AFFIRM** the magistrate judge's entry of summary judgment for SAS on all counts of Jet's second amended complaint. We also **AFFIRM** the magistrate judge's denial of leave to amend the complaint for the reasons stated in Part II.C.