THE HENRY FURNACE CO., APPELLEE, *v.*
KAPPELMAN ET AL., APPELLANTS.

(No. 22414—Decided March 24, 1952.)

*Messrs. Krueger, Gorman & Davis,* for appellee.
*Messrs. Wyner & Wyner,* for appellants.

THOMPSON, J. This case has been appealed to this court on questions of law from a judgment of the Common Pleas Court of Cuyahoga County granting to plaintiff an injunction permanently enjoining the de-

fendants, Kappelman and The Moncrief Furnace Company of Cleveland, Inc., from carrying on business in the corporate name of the latter defendant.

The facts established by the pleadings and the evidence may be briefly noted. Plaintiff, The Henry Furnace Company, since 1943, has engaged in the Cleveland area in the manufacture of furnaces bearing the trade name and label of "Moncrief Furnaces." Some of the Moncrief furnaces are operated by gas, others by oil, and there are various models in different price ranges. Plaintiff has been the only manufacturer of Moncrief furnaces in this area since 1943, when it acquired by purchase the plant, patents and all other rights of The Henry Furnace & Foundry Company, which latter company together with its various predecessors, Henry & Scheible Company, The T. E. Henry Furnace Company and Henry Miller Foundry Company, had manufactured at least since 1905 a furnace similarly known in the trade as a Moncrief furnace. The Henry Furnace & Foundry Company, and its immediate predecessor, The T. E. Henry Furnace Company, prior to the acquisition of its plant and assets by plaintiff, had sold its product, the Moncrief furnace, throughout the United States, with the exception of the states of Georgia, Florida, North Carolina and South Carolina. Under a consent decree entered into on September 30, 1914, The T. E. Henry Furnace Company and one S. P. Moncrief, in a law suit in a Georgia court, had provided that S. P. Moncrief and his associates should be entitled to the exclusive use of the trade name, "Moncrief," in the four states mentioned; that in the states of Alabama and Mississippi the said Moncrief and The T. E. Henry Furnace Company should be entitled to use the trade name, "Moncrief," in common; and that The T. E. Henry Furnace Company, its successors and assigns should be entitled to

the exclusive use of the trade name, "Moncrief," on furnaces sold in all other states of the United States and in foreign countries. (Plaintiff's exhibit 26.) It should be added that there is testimony in the record that in Dallas, Texas, a company under the name of Moncrief Furnace & Manufacturing Company at the present time is engaged in selling a furnace known as the M.F.C. DeLuxe but its field appears definitely limited to that state.

The petition of The Henry Furnace Company alleged that its business and that of its predecessors has been conducted in Cuyahoga county through several distributors and approximately 60 dealers. The testimony disclosed that since 1943 and up to August 1951 plaintiff spent $353,820 in advertising its Moncrief furnaces and accessories. Of this amount $73,879.99 was spent in Cuyahoga county. Total sales were more than $24,000,000 during the same period, of which $6,511,635 constituted sales in Cuyahoga county.

Plaintiff's petition asserted that at no time prior to March 18, 1951, had anyone except plaintiff, its authorized dealers and distributors manufactured or sold furnaces under the name, "Moncrief," in Cuyahoga county, Ohio, such name having theretofore been exclusively employed in this territory by plaintiff and its predecessors. The testimony bears out these claims. Plaintiff, in its petition, further alleged that by its action and that of its predecessors, distributors and dealers in advertising, selling and servicing furnaces under the name, "Moncrief," a valuable goodwill had become attached to plaintiff's product.

The petition alleged that on March 18, 1951, defendant Kappelman filed articles of incorporation of The Moncrief Furnace Company of Cleveland, Inc., defendant corporation, with the Secretary of State of Ohio and that the purpose of the organization by de-

fendant Kappelman of the defendant corporation was to sell plaintiff's and other furnaces as Moncrief furnaces, with the deliberate intent and purpose of deceiving the public and of leading the public to believe that the defendant corporation was the manufacturer of plaintiff's furnaces. Plaintiff alleged further that, immediately after the filing of articles of incorporation of the defendant company, the defendants advertised Moncrief furnaces and offered them for sale. The petition asserted that the acts of the defendants constituted unfair competition and that the business and goodwill of plaintiffs, its distributors and dealers and products would be gravely damaged if such acts on the part of defendants were permitted to continue. Plaintiff asked that defendants be enjoined from doing business under the name of The Moncrief Furnace Company of Cleveland, Inc., and from advertising or otherwise representing themselves to be the manufacturers of Moncrief furnaces.

The answer of defendants admitted they were in the business of selling furnaces and that defendant corporation was incorporated under date of March 18, 1951, without notice or consent of plaintiff. The answer denied each and every allegation of plaintiff's petition not admitted therein.

At the trial, plaintiff introduced testimony of company officials establishing its exclusive use in Cuyahoga county of the trade name of Moncrief Furnaces as well as data as to its extensive sales and advertising. Plaintiff's 121 exhibits consisted primarily of examples of catalogue and trade advertising and also weekly newspaper advertising conducted by plaintiff in Cuyahoga county newspapers. A sample of such latter advertising is plaintiff's exhibit 33, a scrapbook consisting of actual advertisements which appeared in 17 newspapers published in Cuyahoga county during the period February 11, 1945, through July 13, 1945.

This revealed advertising each week by The Henry Furnace Company of its Moncrief furnaces in four English language newspapers (Catholic Universe Bulletin, Cleveland News, Cleveland Plain Dealer and Cleveland Press) and advertisements appearing in foreign language newspapers listed, comprising one Italian, Rumanian, Bohemian, Lithuanian and Hungarian, and two Slovenian, Yiddish, Polish, and German publications. Other exhibits of plaintiff similarly showed newspaper advertising during other years between 1943 and 1951.

In addition to its detailed breakdown of testimony relating to advertising, plaintiff called the defendant Kappelman as if under cross-examination. The latter admitted that there is no individual connected with the defendant corporation bearing the name of Moncrief and that the corporate name of defendant was selected with knowledge of plaintiff's business.

At the close of plaintiff's case, defendants moved that plaintiff's petition be dismissed and for a judgment in their favor. This motion was overruled by the trial court and defendants thereupon rested their case without the introduction of testimony, merely renewing their motion to dismiss. The trial court thereafter granted judgment for plaintiff and permanently enjoined defendants from doing business in Cuyahoga county in the name of the defendant corporation. Defendants are the appellants in this court. We shall refer to the parties as they appeared in the trial court.

Two grounds of error are urged by defendants in this court: First, that the judgment of the trial court was erroneous since the evidence failed to reveal that the defendant corporation was in actual competition with plaintiff, and, second, that lack of exclusive use of the trademark, ''Moncrief,'' should have caused a denial of equitable relief to plaintiff.

With respect to the first assignment of error, de-

fendants contend that the trial court improperly enjoined them from doing business in their present corporate name since, they claim, there was no actual competition indicated between the plaintiff and the defendants. Defendants point out that plaintiff is a manufacturer while defendant corporation is a retailer. They urge that since plaintiff sells to dealers and to distributors and not to the public or to ultimate consumers, there is no actual competition between them. They assert that courts of equity grant relief in unfair competition cases only where the competition is actual, that is, only where the defendant ''deals in competitive goods or services or is engaged in a competitive business.''

Although pointing out that the cases are not in agreement, counsel for defendants refer to the view expressed in 52 American Jurisprudence, 573, Section 93, that there cannot be unfair competition unless there is, in fact, competition. The value of the reference to that page of the text, however, is weakened if one examines page 576 and following of the same authority, stating that the more recent cases recognize the right to equitable relief in many circumstances even where the competition is not for the same market. Counsel for defendants further point out that no Ohio cases are cited in support of the proposition stated in 39 Ohio Jurisprudence, 394, Section 51, that the doctrine of unfair competition is not confined to cases of actual market competition between similar products.

While we grant that the cases in Ohio upon this precise point are few, and apparently none in Ohio had been decided at the time of the statement in Ohio Jurisprudence, we find a subsequent Ohio case decided in 1937, *Hugo Stein Cloak Co.* v. *S. B. Stein & Son, Inc.,* 58 Ohio App., 377, 16 N. E. (2d), 609 (motion to certify overruled March 16, 1938), a decision by the

Court of Appeals of the Sixth Appellate District, which holds that direct competition for the same market is not required in order to authorize a court of equity to grant relief for unfair competition. The court in that case actually went further than the trial court in the instant case for in the *Stein Cloak Company case* plaintiff and defendant were corporations operating stores which sold noncompeting products. They were in close proximity on the same street and the owners of each corporation bore the same family name of Stein, but plaintiff was engaged in the retail sale of clothing for women while defendant was engaged in the retail sale of diamonds and jewelry. The plaintiff corporation had been in business in Toledo for more than thirty years and it advertised itself not by the full corporate name but by use of the name ''Stein's,'' as a trade name. Plaintiff had spent large sums of money in making its trade name known to the public and had had the name registered as a trademark. The defendant had never used the single word, ''Stein's,'' as a trade-mark or in newspaper advertising until thirty years after plaintiff commenced to use that name. In the fall of 1936, defendant remodeled its store front and erected two neon electric signs bearing the single word, ''Stein's,'' across the front of its store. It also commenced, at the same time, to carry its advertising under the one word, ''Stein's.'' There was evidence of confusion on the part of the public and that a number of persons came to plaintiff's store in the fall of 1936 inquiring about jewelry. The plaintiff therefore asked for equitable relief alleging that it had used the trade name, ''Stein's,'' for thirty years and that its business reputation, identity and goodwill had been merged into the distinctive word, ''Stein's,'' rather than in its corporate name. Plaintiff charged that by reason of the adoption by defendant of the word, ''Stein's,'' to the

exclusion of other descriptive matter, the public had been and would continue to be confused and misled and that defendant was making unwarranted profit by using the plaintiff's trade name. Upon trial of the case it was conceded that the lines of business of the parties were not competing lines and the defendant urged that the protection of trade names was not applicable to noncompeting businesses. None the less, the court granted the relief requested. While recognizing that the defendant, according to the record, enjoyed a reputation for fair dealing and honesty, the court declared that plaintiff was not required to entrust its own goodwill or any part of it to the defendant's keeping. In its opinion, the Court of Appeals declared at page 382:

"Under the overwhelming weight of authority the appellant is entitled to protection against the use, by another, of its established trade name and trade-mark in such manner as to mislead the trade and the public to believe that when they are dealing with one they are dealing with the other, or in such manner that such use results, or may result, in appropriation of the goodwill, a property right of the other—in the first case a fraud upon the public; in the second, an infringement of a property right."

In the *Stein Cloak Company case*, it will be seen that relief was granted the plaintiff even though defendant was selling jewelry and plaintiff was selling clothes. Such relief was therefore not granted on the basis that the parties were vying for the same market, but on the score that plaintiff was entitled to be protected from confusion with the defendant and from consequent loss of investment and goodwill. While courts in the early unfair-competition cases enjoined a defendant who was passing off his goods as those of plaintiff, the Ohio case referred to, and other soundly based decisions, have enjoined acts of a defendant con-

fusing or tending to deceive the public, as well as acts indicating an effort to obtain a "free ride" based on plaintiff's investment in his business and reputation.

For one of the best statements on the development of the law of trade-marks and their protection, see 38 Harvard Law Review, 370, and the tabulation of cases in an annotation in 148 A. L. R., 12, entitled "Actual Competition as Necessary Element of Trade Mark Infringement or Unfair Competition," particularly the cases cited at page 22 and following, under the subheading, "Modern View."

One of the cases relied on in the opinion in the *Stein Cloak Company case*, and a leading case in the federal courts, is *Vogue Co.* v. *Thompson-Hudson Co.*, 300 F., 509 (certiorari denied 273 U. S., 706, 71 L. Ed., 850, 47 S. Ct., 98), a decision by the Sixth Circuit Court of Appeals in 1924. In that case, Vogue Magazine was held entitled to restrain the defendant from use of its trade name in a market in no sense competing. Defendant was selling hats while plaintiff sold magazines. Judge Denison, in his opinion, pointed out that the more recent cases involving unfair competition authorize relief even though the competition may not be for the same market. He further suggested that a court of equity has authority to grant relief, irrespective of the feature of competition, where a defendant seeks to secure to himself the benefits of plaintiff's reputation acquired by investment and trade through the years. Judge Denison declared: "there is no fetish in the word 'competition.' The invocation of equity rests more vitally upon the unfairness."

The cases similarly holding that equity may act regardless of the showing of actual competition are numerous in recent years. As stated in the note in 38 Harvard Law Review, 370, 372, previously cited:

"Courts of equity in these unfair competition cases are seeking to protect the good-will and reputation of

the plaintiff. Insistence by the courts upon the presence of competition between the parties can only be justified upon a theory that good-will and reputation can only be damaged by competitors. But such a theory is untenable, in the light of human experience. If the defendant's conduct is likely to cause confusion of the traders, so that the public believes or is likely to believe that the goods of the defendant are the goods of the plaintiff or that the plaintiff is in some way connected with or is a sponsor for the defendant, then a sufficient case is made out for injunctive relief. The result of a contrary rule would make the good-will and reputation of the plaintiff depend not only upon the conduct of the plaintiff but also upon the acts of the defendant and the excellence, or, what is more likely, the inferiority, of his products.''

One of the well reasoned cases is *Lady Esther, Ltd., v. Lady Esther Corset Shoppe, Inc.* (1943), 317 Ill. App., 451, 46 N. E. (2d), 165, 148 A. L. R., 6. In that case, the Illinois Appellate Court granted an injunction to a cosmetic concern against a corset shop incorporated under a similar name. Although no one was likely to be mistaken in assuming that the two concerns were selling the same product, the court found equity was able to grant relief to prevent deception and protect goodwill. The court declared:

''In the instant case we think it clear that the public might be deceived into thinking there was some connection between the defendant and the plaintiff companies. And the good-will of plaintiff, which it had built up at great expense over a period of years, would be whittled away. Courts of equity ought not to be so feeble as to be unable to prevent this. And the fact that defendant received a charter to use the name 'Lady Esther Corset Shoppe, Inc.,' does not protect it.''

For further cases of similar import see annotation

in 148 A. L. R., 12, at page 22; 1 Nims Unfair Competition and Trade-Marks (4 Ed.), 274, Section 91; *Mantle Lamp Co. of America* v. *Aladdin Mfg. Co.* (C. C. A. 7, 1935), 78 F. (2d), 426 (certiorari denied 296 U. S., 639, 80 L. Ed., 454, 56 S. Ct., 173); *Standard Oil Co. of New Mexico, Inc.,* v. *Standard Oil Co. of California* (C. C. A. 10, 1932), 56 F. (2d), 973; *Great Atlantic & Pacific Tea Co.* v. *A. & P. Cleaners & Dyers, Inc.* (1934), 10 F. Supp., 450; *Del Monte Special Food Co.* v. *California Packing Co.* (C. C. A. 9, 1929), 34 F. (2d), 774; *Maison Prunier* v. *Prunier's Restaurant & Cafe, Inc.* (1936), 159 Misc., 551, 288 N. Y. Supp., 529; *American Insulation Co.* v. *Eternit Roofing Co.* (District Court, 1926), 14 F. (2d), 235. Reference is likewise made to an article: "Relief in Equity Against Unfair Trade Practices of Non-Competitors," by James F. Oates, Jr., 25 Illinois Law Review, 643.

On the general subject, see, also, Oldham's "Trademark Law and Practice" 1948, Section 1, which declares as follows:

"The common use of the expression 'unfair competition' is misleading. It carries the implication of a rule that no longer prevails, namely, that a cause of action for 'unfair competition' presupposes the existence of *competition* between the parties."

The author then states:

"It is rapidly becoming the established rule in most courts, however, that relief will be granted to restrain *unfair practices* regardless of the element of comtition."

It would appear that whatever reasons may have been given by early chancellors to explain their willingness to act in unfair competition cases, the fact is that the conscience of the courts has responded, and properly responded, to the quickening complexities and needs apparent in modern business and to the widening recognition of its individual and public re-

sponsibilities. The law of the jungle has long since given way to more orderly processes of law, so far as individual relationships are concerned, and this is similarly true in the field of trade. Courts today are readier to protect the individual in his business relationships and to insist that unfair commercial practices be restrained. In this connection, it is not competition, in and of itself, which concerns the court but unfair and unscrupulous business tactics.

We are not persuaded that the parties herein are not in competition merely because plaintiff is a wholesaler and the defendant company is a retailer, for they sell the same product—furnaces. It seems immaterial that plaintiff's product finds its way to the public through the medium of distributors. 3 Restatement of the Law of Torts, 608, Section 734. Sales are the measure of the business in either instance. Defendant admitted that it had purchased from plaintiff's distributors and sold at least a few of plaintiff's Moncrief furnaces. Plaintiff's exhibit 7 is a newspaper advertisement which defendants inserted in the Cleveland News under date of March 27, 1951, only a few days after incorporation, advertising and picturing for sale at $369 a furnace labelled "A Moncrief steel gravity gas furnace." Very possibly the Moncrief furnaces purchased by defendants from plaintiff's distributors and then resold were acquired to satisfy the demands of certain of defendants' customers, who would take nothing other than a Moncrief furnace. Can the defendant corporation with any sincerity urge that it will not again sell a Moncrief furnace and that it will thus eliminate direct and unfair competition with plaintiff? Surely not, for the more furnaces sold by defendant of a different type than Moncrief, the more competition there will be, and the greater impairment to plaintiff's trade. This would not be of vital importance, since competition in and of itself is

not a matter calling for protection, were it not that, in conjunction with it, use by defendants of the name, "Moncrief," is a practice certain to divert plaintiff's customers to defendants' door. Under such circumstances it is unlikely that they will ordinarily depart without being sold a substitute, if it be furnaces they seek. If they receive better furnaces than plaintiff's, they will not suffer as much as plaintiff, but if the furnaces are of an inferior grade, plaintiff will suffer and the customers likewise will be injured and deceived.

We do not have here a case where defendant is being deprived of the use of his own surname by being enjoined from use of the name, Moncrief. (Even in such circumstances relief has been granted by Ohio courts. *Stern Furniture Co.* v. *Stern,* 83 N. E. [2d], 804, a decision by this court in 1948. See, also, on general proposition, *Cloverleaf Restaurants, Inc.,* v. *Lenihan,* 79 Ohio App., 493, 72 N. E. [2d], 761.) We have a case where, with all the world to choose from, defendants knowingly adopted as a corporate name a trade name of peculiar meaning to the particular business which had been developed and enhanced by plaintiff through the years. It was a name become of sufficient value so that defendants apparently hoped to cash in upon it, and to reap where they had not sowed.

We believe the evidence makes out a case of actual competition between plaintiff and defendants, although it is likewise our opinion that proof of actual and direct competition was not required in order to entitle plaintiff to an injunction. The use of another's reputation may be as disastrous as the outright taking of his trade. Modern courts give standing to a name and protect it as a property right.

Holding the views indicated, we find no error in the action of the trial court so far as the first assignment of error is concerned.

464

With respect to the second assignment of error, plaintiff's evidence established exclusive prior use of the trade name within the area where the injunction was sought and this is all that is required. *Aultz* v. *Zucht* (Texas, 1919), 209 S. W., 475.

The judgment of the Common Pleas Court is affirmed.

*Judgment affirmed.*

SKEEL, P. J., and HURD, J., concur.