**LEVENTHAL & ASSOCIATES, INC., Appellant,**

v.

**THOMSON CENTRAL OHIO, Appellee.**

[Cite as *Leventhal & Assoc., Inc. v. Thomson Cent. Ohio* (1998), 128 Ohio App.3d 188.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APE08–1011.

Decided June 4, 1998.

**190**

*Eric J. Wittenberg Co., L.P.A.,* and *Eric J. Wittenberg,* for appellant.

*Porter, Wright, Morris & Arthur* and *Thomas A. Young,* for appellee.

PETREE, Judge.

Plaintiff, Leventhal and Associates, Inc., appeals from a decision of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant, Thomson Central Ohio. Plaintiff sets forth four assignments of error, as follows:

"[I.] The trial court erred in granting appellee's motion for summary judgment; therefore, the summary judgment should be overruled and the case remanded.

"[II.] Count one of the appellant's complaint is based on a cause of action under common law deceptive trade practices and R.C. 4165.02, not on misappro-

priation of trade secrets, thus the trial court erred by applying the wrong legal standard and summary judgment should be overruled and the case remanded.

"[III.] The trial court erred in finding that appellee did not engage in acts of unfair competition; therefore, summary judgment should be overruled.

"[IV.] The trial court ignored count three of appellant's complaint; therefore, summary judgment should be overruled, and should be remanded to trial on the merits."

Since 1983, plaintiff has published a children's magazine called *Kids Connection. Kids Connection* is published three or four times a year and is distributed free of charge in five or six central Ohio counties. In Franklin County, it is distributed primarily through the Columbus Public Schools, Columbus Metropolitan Libraries, and Columbus recreation centers. Outside Franklin County, it is distributed primarily through sponsors and advertisers. There are no paid subscribers to *Kids Connection.*

*Kids Connection* is financed entirely by advertisers and sponsors. An advertiser pays for an advertisement and, in exchange, receives copies of the magazine for distribution to its customers and/or employees. A sponsor pays a larger sum of money than an advertiser and, in exchange, is featured more prominently in the magazine. Specifically, a sponsor is featured, by name and logo, on the cover, in the table of contents, and on the top of the page that it sponsors. A sponsor receives large quantities of the magazine for distribution.

*Kids Connection* is targeted at children ages five through twelve and is composed of creative materials submitted by children in the central Ohio area. *Kids Connection* also includes a calendar of upcoming children's events in the community.

Defendant is a division of Thomson Newspapers, Inc., which is part of Thomson Enterprises, a multinational company. Thomson Newspapers, Inc. publishes both daily and weekly newspapers, numerous magazines, and other publications. Sharon Whalen is the Vice-President of defendant's Business Development Division and is primarily responsible for developing new publications within central Ohio.

In September 1995, Whalen began surveying the central Ohio area to develop new publications for defendant. Defendant was particularly interested in entering the specialty publishing area. In November 1995, Thomson Target Media, a product development division of Thomson Newspapers, Inc., informed Whalen of a children's magazine called *Curiocity For Kids,* which Thomson Target Media had developed and which Thomson Newspapers, Inc. had begun publishing in Wisconsin. In December 1995, Whalen met with representatives of Thomson Target Media to explore the possibility of defendant's publishing a similar

magazine in the central Ohio area. At that meeting, Whalen and the Thomson Target Media representatives discussed the concept of financing the magazine through underwriters.

In December 1995, Whalen and her staff began conducting market research in the central Ohio area to determine whether there existed enough community support and advertising interest to support a children's magazine. This market research did not uncover the existence of *Kids Connection* or any other children's publication in the central Ohio area.

In mid-January 1996, Whalen learned of the *Kids Connection* publication and the fact that it was for sale. Whalen obtained a copy of *Kids Connection* at a branch of the Columbus Metropolitan Library. She arranged a meeting with Aaron Leventhal, plaintiff's president, on January 31, 1996 to discuss the possibility of purchasing *Kids Connection*. During the course of this meeting, Whalen did not mention that defendant was in the process of developing a competing children's publication. Leventhal explained to Whalen how he operated *Kids Connection*, including the use of sponsors to underwrite the magazine. Leventhal gave Whalen several items to take with her for review, including back issues of *Kids Connection* and advertising rate sheets. These same materials had been given to other potential purchasers. Whalen was not asked to treat the materials as confidential, nor was she requested to sign a confidentiality agreement. Whalen was informed that the purchase price of *Kids Connection* was $30,000. Whalen told Leventhal she would discuss the matter with her boss and get back with him as quickly as possible.

Sometime between the January 31, 1996 meeting and February 8, 1996, Whalen met with her boss and discussed the possibility of purchasing *Kids Connection*. Defendant decided against the purchase for financial reasons. Thereafter, Whalen communicated this decision to Leventhal by letter dated February 8, 1996. This letter did not mention that defendant was in the process of developing a competing publication. The *Kids Connection* materials were returned to Leventhal.

In April 1996, defendant produced and distributed promotional materials that described the content of and proposed distribution system for a children's magazine called *Columbus Curiocity For Kids*, set forth advertising specifications and rates, and listed underwriting opportunities that were available with respect to the publication. These promotional materials were distributed to a very limited number of persons who had been targeted as potential advertisers for *Columbus Curiocity For Kids*. Defendant also produced and distributed a prototype edition of *Columbus Curiocity For Kids* to small focus groups of parents and children. According to Whalen, the model for the prototype edition

of *Columbus Curiocity For Kids* was Thomson Newspapers, Inc.'s Wisconsin *Curiocity For Kids,* not *Kids Connection.*

The promotional materials referenced above stated that *Columbus Curiocity For Kids* was "Columbus' only magazine for kids!" Within forty-eight hours after Whalen became aware of the potential problem associated with using that statement, she eliminated the problem by ordering revised promotional materials that did not contain that wording.

Based on focus group results, defendant went ahead with publication of *Columbus Curiocity For Kids.* The first issue was distributed in June 1996. The magazine is published monthly and is targeted at children ages six through twelve. Half of the contents of *Columbus Curiocity For Kids* is submitted by children in the central Ohio area; the other half is provided by Thomson Target Media. Included in *Columbus Curiocity For Kids* is a calendar of upcoming events for children, as well as software reviews and cooking and sports sections. *Columbus Curiocity For Kids* is sponsored by advertisers and underwriters. The names and logos of the underwriters are not displayed on the cover of the magazine. The magazine is sold through paid subscriptions.

On May 3, 1996, plaintiff filed a three-count verified complaint for injunctive relief and money damages alleging (1) that defendant used *Kids Connection* as a model in publishing *Columbus Curiocity For Kids,* and that such action constituted an appropriation of the product designed by plaintiff and unfair competition with plaintiff; (2) that defendant committed a deceptive trade practice under R.C. 4165.02 in that it "palmed off" *Columbus Curiocity For Kids* as one of plaintiff's publications and/or created a likelihood of confusion as to whether *Columbus Curiocity For Kids* is produced or sponsored by or affiliated with plaintiff; and (3) that Whalen acted knowingly and intentionally in misrepresenting the purpose of her meeting with Leventhal with the intention of inducing Leventhal to surrender information relative to the publication and sale of *Kids Connection.*

On the same day, plaintiff filed a motion for a temporary retraining order, preliminary injunction, and permanent injunction. On May 13, 1996, the parties filed an "Agreed Temporary Restraining Order," restraining defendant from advertising or promoting *Columbus Curiocity For Kids* as being "The only publication for kids in Central Ohio" or "Columbus' only magazine for kids." A hearing before a magistrate was scheduled for June 28, 1996 on plaintiff's motion for preliminary injunction.

After the June 28, 1996 hearing, the magistrate filed a written decision denying plaintiff's motion for preliminary injunction. The magistrate's decision characterized plaintiff's verified complaint as one for misappropriation of trade secrets as well as common-law and statutory deceptive trade practices. The magistrate's decision was adopted by the trial court by entry dated August 21, 1996.

Defendant filed a motion for summary judgment on February 7, 1997, supported by the transcript of the testimony from the June 28, 1996 hearing on plaintiff's motion for preliminary injunction. In its motion, defendant argued that plaintiff failed to demonstrate genuine issues of material fact as to plaintiff's causes of action for misappropriation of trade secrets in violation of R.C. 1333.51 and 1333.61 and deceptive trade practices under the common law and R.C. 4165.02 and that, accordingly, it was entitled to judgment as a matter of law.

Plaintiff filed a memorandum contra defendant's motion for summary judgment on March 25, 1997, arguing that its complaint did not allege a misappropriation of trade secrets by defendant; rather, the complaint alleged deceptive trade practices under the common law and R.C. 4165.02 and bad faith conduct by defendant (1) in misrepresenting the purpose of the January 1996 meeting between Whalen and Leventhal, (2) in obtaining information relative to the publication and sale of *Kids Connection*, and (3) in publishing a copy of *Kids Connection* as its own. Plaintiff further argued that genuine issues of material fact existed as to all of its claims; therefore, summary judgment was inappropriate.

On June 30, 1997, the trial court issued a decision granting defendant's motion for summary judgment. On the same day, the trial court, by *nunc pro tunc* entry, struck its August 21, 1996 entry adopting the magistrate's decision denying plaintiff's motion for preliminary injunction, and entered a new order adopting the magistrate's decision. The trial court's decision was journalized by entry dated July 10, 1997.

We note that in each of plaintiff's assignments of error, plaintiff challenges the trial court's decision on the grounds that the trial court failed to comply with Civ.R. 56 in granting summary judgment. Accordingly, we will consider plaintiff's assignments of error jointly.

When reviewing a summary judgment motion, an appellate court applies the same standard as that applied by the trial court, *i.e.*, it reviews the judgment independently. *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411, 413. Under Civ.R. 56, summary judgment is proper when (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 617 N.E.2d 1129. The trial court should award summary judgment with caution, being careful to resolve doubts and construe the evidence in favor of the nonmoving party. *Id.* See, also, *Leibreich v. A.J. Refrigeration, Inc.* (1993), 67 Ohio St.3d 266, 617 N.E.2d 1068. Any doubt as to the existence of a genuine

issue of material fact must be resolved in favor of the nonmoving party.  *Davis v. Loopco Industries, Inc.* (1993), 66 Ohio St.3d 64, 609 N.E.2d 144.

Plaintiff's common-law deceptive trade practices claim is based on the principle that it is a deceptive trade practice for one person to use a trade name similar to another person's established trade name, where the natural and probable consequence of the use of the similar name would be to mislead, deceive, or confuse the public into believing that there is an identity, affiliation, or relationship between the two persons.  See *Henry Furnace Co. v. Kappelman* (1952), 91 Ohio App. 451, 49 O.O. 57, 108 N.E.2d 839; *Hugo Stein Cloak Co. v. S.B. Stein & Son, Inc.* (1937), 58 Ohio App. 377, 12 O.O. 229, 16 N.E.2d 609; *Guild & Landis, Inc. v. Liles & Landis Liquidators, Inc.* (1959), 2 Ohio Misc. 169, 31 O.O.2d 433, 207 N.E.2d 798.  Plaintiff argues that the name *Curiocity For Kids* is so similar to the name *Kids Connection* that the natural and probable consequence is to mislead, deceive, or confuse the public into believing that there is an identity, affiliation, or relationship between the two publications.  We disagree.

The names of the two publications are clearly distinct and separate.  The only similarity between them is the use of the word "kids."  However, as a matter of law, plaintiff cannot claim exclusive right to use of a highly descriptive, generic word such as "kids."  See *Natl. Conference of Bar Examiners v. Multistate Legal Studies, Inc.* (C.A.7, 1982), 692 F.2d 478.

There is no evidence to suggest that defendant chose or uses the name *Columbus Curiocity For Kids* because it is similar to the name *Kids Connection,* nor is there any evidence to suggest that the name is used to mislead, deceive, or confuse the public into believing that the two publications are affiliated.  The name *Columbus Curiocity For Kids* was taken from a magazine called *Curiocity For Kids* that Thomson Target Media had developed and that Thomson Newspapers, Inc. had begun publishing in Wisconsin.  Thus, this court finds that no genuine issues of material fact exist as to plaintiff's claim of common-law deceptive trade practices and that defendant is entitled to judgment as a matter of law on this issue.

Plaintiff's statutory deceptive trade practices claim is based upon R.C. 4165.02(A), (B), and (C), which provide:

"A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he:

"(A) Passes off goods or services as those of another;

"(B) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

"(C) Causes likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another[.]"

■ When adjudicating claims arising under the Ohio Deceptive Trade Practices Act, Ohio courts shall apply the same analysis applicable to claims commenced under analogous federal law. *Cesare v. Work* (1987), 36 Ohio App.3d 26, 28, 520 N.E.2d 586, 590; *Worthington Foods, Inc. v. Kellogg Co.* (S.D.Ohio 1990), 732 F.Supp. 1417.

We first address plaintiff's claim regarding defendant's alleged violation of R.C. 4165.02(A). In *Worthington Foods, supra,* the court defined "palming off," which is analogous to "passing off," as used in the Ohio Deceptive Trade Practices Act:

■ "Palming off occurs when a defendant attempts to bring about consumer confusion by causing consumers to purchase its products under the mistaken belief that they are in fact purchasing the plaintiff's goods." *Id.* at 1431.

■ In the instant case, plaintiff argues that defendant attempted to "pass off" its publication as that of plaintiff by including the phrases "the only publication for kids in Central Ohio" or "Columbus' only magazine for kids" in its April 1996 promotional materials. Plaintiff contends that since Whalen knew that *Kids Connection* was the only children's publication in central Ohio, the "average purchaser" would also know that *Kids Connection* was central Ohio's only children's publication and, accordingly, by reading the phrases "the only publication for kids in Central Ohio" or "Columbus' only magazine for kids" in defendant's publication, the "average purchaser" would mistakenly believe that the promotional materials referred to *Kids Connection.*

Initially, we note that the wording in question was not contained in the prototype edition of *Columbus Curiocity For Kids* itself, but in promotional materials that were sent to a very limited number of potential advertisers. Furthermore, plaintiff submitted no evidence to establish that any "average purchaser" had any knowledge whatsoever regarding the status of the children's publication market in central Ohio, or any evidence that any "average purchaser" knew that *Kids Connection* was the only children's publication in central Ohio. Moreover, no evidence was presented to establish that any "average purchaser," after reading the aforementioned phrases, would mistakenly believe that the promotional materials referred to *Kids Connection.* The only evidence submitted on this issue consisted of Whalen's admission, at the hearing on the motion for preliminary injunction, that within forty-eight hours after she became aware of the potential problems associated with using these phrases, she eliminated any potential problems by ordering revised promotional materials that did not contain this wording.

Furthermore, the record reveals that plaintiff was granted an order restraining defendant from using either of these phrases in any published materials. No evidence suggests that defendant has continued the use of these phrases in any subsequent promotional materials or in any issues of *Columbus Curiocity For Kids*. Thus, the issue is, at this point, moot regarding plaintiff's claims for injunctive relief.

Construing the evidence most strongly in favor of plaintiff, reasonable minds can come to but one conclusion, that is, that defendant's short-lived use of the phrases in question did not cause an "average purchaser" to mistakenly believe that *Columbus Curiocity For Kids* was the same magazine as *Kids Connection*. Thus, as a matter of law, defendant did not "pass off" its publication as that of plaintiff.

We next turn to plaintiff's contention regarding defendant's alleged violation of R.C. 4165.02(B) and (C). Plaintiff argues that *Columbus Curiocity For Kids* is so similar in name, content, style, and appearance to *Kids Connection* that there is a likelihood of confusion as to whether *Columbus Curiocity For Kids* is sponsored by or affiliated, connected, or associated with plaintiff.

In determining whether there is a likelihood of confusion as to the affiliation, connection, or association between products, courts consider numerous factors, including (1) strength of the mark (name) identifying the products, (2) the relatedness of the products, (3) similarity between the marks and the products, (4) evidence of actual confusion, (5) marketing channels used, (6) likely degree of purchaser care, (7) the alleged wrongdoer's intent in selecting the mark, and (8) likelihood of expansion of product lines. *Cesare, supra*, 36 Ohio App.3d at 30, 520 N.E.2d at 591–592, citing *Frisch's Restaurants, Inc. v. Elby's Big Boy* (C.A.6, 1982), 670 F.2d 642. Likelihood of confusion requires a showing that the ordinary consumer will be misled or deceived by the similarity between the products at issue. *Cesare, supra*, at 30, 520 N.E.2d at 591–592; *George P. Ballas Buick–GMC, Inc. v. Taylor Buick, Inc.* (1982), 5 Ohio App.3d 71, 5 OBR 182, 449 N.E.2d 503.

After reviewing the evidence submitted with regard to the foregoing eight factors, this court concludes, as a matter of law, that plaintiff has failed to establish a likelihood of confusion by the ordinary, prudent consumer in the marketplace as to the sponsorship, affiliation, connection, or association of the two magazines.

The evidence establishes that there are significant differences between the publications in both appearance and content. The page size of *Columbus Curiocity For Kids* is physically larger than *Kids Connection*. The titles of the publications are prominently displayed on the respective covers. The only

similarity between the titles is the use of the term "kids," which we have previously determined is not a term subject to exclusive use by plaintiff. Each of the publications contains the names of its publisher, editor, director, and the office address. The fact that each publication lists the names of the publisher, editor, director, and office address negates a finding of likelihood of confusion as to the source or ownership of the two magazines. *Ballas, supra.*

Furthermore, the focus of *Kids Connection* is entirely on the central Ohio community, whereas *Columbus Curiocity For Kids* features articles and events from outside the Columbus area. *Kids Connection* displays children's artwork and the names of its sponsors on the front cover; *Columbus Curiocity For Kids* does not. *Columbus Curiocity For Kids* contains sports, software review, and cooking sections; *Kids Connection* does not. Although both magazines contain a calendar of events, the calendars do not resemble one another.

Plaintiff argues that it presented "evidence of actual confusion" in the form of testimony offered by Susan Switzer. Switzer, a former employee and casual acquaintance of Leventhal, testified that, prior to April 1996, her eight and ten-year-old children were regular readers of *Kids Connection.* She, too, was familiar with the publication and knew that Leventhal planned to sell the magazine. In April 1996, her ten-year-old son was asked to be part of the focus group for the prototype issue of *Columbus Curiocity For Kids.* Her son received a copy of the prototype issue in the mail. Switzer testified that, at first glance, both she and her son noticed a similarity in appearance between *Columbus Curiocity For Kids* and prior issues of *Kids Connection.* Switzer testified that the similarities caused her some confusion because she was not sure whether Leventhal had sold *Kids Connection.* However, she admitted that she saw the publisher's name—Thomson Central Ohio—on the *Columbus Curiocity For Kids* prototype and thus realized, based upon further review of the prototype, that it was not sponsored by plaintiff. She further admitted that the "similarity" she noted between the two publications was that both were directed toward children.

Further differences exist in the way the two publications are marketed and distributed. *Kids Connection* is published three or four times a year; *Columbus Curiocity For Kids* is a monthly publication. *Kids Connection* is a free publication that is distributed primarily through Columbus Public Schools, Columbus Metropolitan Libraries, nonprofit organizations, sponsors, and advertisers. In contrast, *Columbus Curiocity For Kids* is distributed by direct mailings to households and is available at child-oriented retail locations.

*Kids Connection* is financed through the sale of advertisements in the publication and by soliciting sponsors. *Columbus Curiocity For Kids* generates revenues by selling advertising space and paid subscriptions and using promotional underwriters. According to Whalen, although underwriters are similar in func-

tion to sponsors, the idea of using underwriters in addition to advertisers to finance a magazine is not unique and is not a concept defendant learned or took from plaintiff. Even Leventhal testified that he was aware of other publications that have used the sponsorship concept. Whalen also testified that she had discussed the promotional partners/underwriters concept with the head of Thomson Target Media prior to her January 1996 meeting with Leventhal. The evidence offered as to defendant's intent in selecting its mark (name) establishes that defendant selected the name and appearance of *Columbus Curiocity For Kids* to resemble the Wisconsin *Curiocity For Kids*. No evidence was offered to establish that defendant sought to imitate or copy the *Kids Connection* name.

Upon review of the evidence submitted, we find that no genuine issues of material fact exist as to plaintiff's claim of deceptive trade practices under R.C. 4165.02 and that defendant is entitled to judgment as a matter of law on this issue.

■ As to its third claim, plaintiff asserts that defendant, through its agent, Whalen, acted in bad faith in obtaining information from Leventhal about *Kids Connection* during their January 1996 meeting because she did not disclose to Leventhal that defendant was in the process of developing its own children's magazine. As noted previously, the trial court construed plaintiff's claims in this regard as claims for misappropriation of trade secrets. However, defendant insists that the trial court erred in doing so and that the claim is one for "bad faith in obtaining information." However, plaintiff cites absolutely no case law or authority of any kind to support the existence of a claim for "bad faith in obtaining information."

Furthermore, even assuming the cause of action exists, no evidence of "bad faith" was offered to support plaintiff's claim. Plaintiff's argument seems to suggest that Whalen's stated purpose in meeting with Leventhal, that is, to explore the possibility of purchasing *Kids Connection*, was merely a ruse designed to induce plaintiff into surrendering information about his magazine so that defendant could incorporate this information into its own magazine. However, Whalen testified that defendant was genuinely interested in purchasing *Kids Connection*. After her meeting with Leventhal, defendant seriously discussed purchasing *Kids Connection*, but ultimately decided against it for financial reasons. Upon making this decision, the materials Leventhal gave to Whalen were returned to him.

Furthermore, Leventhal testified that he would have met with Whalen even if she had told him that defendant was considering entering the children's magazine market as a competitor. Upon review of the evidence submitted, we find that no genuine issues of material fact exist as to plaintiff's claim of "bad faith in

obtaining information" and that defendant is entitled to judgment as a matter of law on this issue.

For the foregoing reasons, plaintiff's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

PEGGY BRYANT and JOHN C. YOUNG, JJ., concur.