OPINION
{¶ 1} Plaintiff James Corrova, d.b.a. TAT Restaurant, appeals the judgment entered in favor of defendants John and Barbara Tatman and Tatman, Inc., on claims of common law trade name infringement and deceptive trade practice under R.C. 4165.02. The Muskingum County Court of Common Pleas denied plaintiff's claims following a bench trial. After review of the record and the applicable law, we affirm the judgment.
 {¶ 2} Plaintiff owns and operates a single Italian family restaurant in Columbus, Ohio, known as "TAT Ristorante di Famiglia" (hereinafter "the TAT"). The TAT is pronounced using the initials T-A-T or "Tee Ay Tee". According to plaintiff, there is no meaning, Italian or otherwise, to the word "T-A-T". The trade name registration for the TAT was filed by plaintiff on December 9, 1959, and was in full force and effect at all times relevant hereto.
 {¶ 3} The TAT is a full-service restaurant serving Italian cuisine, including pasta, specialty veal and poultry dishes, pizza, sandwiches, salads and alcoholic beverages. The name "TAT Ristorante di Famiglia" is written in large red and green letters on a white background over the restaurant's entrance. The TAT also advertises on radio and in newspapers in central Ohio, including, to a very limited degree, Muskingum County. The TAT has a following of loyal customers, some of whom have been "regulars" for over 20 years.
 {¶ 4} Over 50 miles away from the TAT, Defendants John and Barbara Tatman began operating a neighborhood pizzeria located on Maysville Pike in Zanesville, Muskingum County, Ohio, called "Tat's Pizzeria South." "Tat's" is short for the surname Tatman, and is pronounced with a short "a". Therefore, it is pronounced and verbally *Page 3 
translated completely different than the TAT, but is similar in appearance when capitalized. Defendants originally owned a restaurant at the same location called "Adornettos," but after their licensing agreement with Mr. Adornetto expired in December of 2002, defendants changed the name to "Tat's Pizzeria South."
 {¶ 5} Defendants registered the name "Tat's Pizzeria South" with the Ohio Secretary of State on or about November 6, 2002. The sign for the Zanesville pizzeria also contains the capital letters "TAT'S" in green letters on a white background with red accents. Tat's serves a more limited variety of Italian food, such as pizza, pasta dishes, salads and sandwiches. It does very little advertising; rather, it relies upon word-of-mouth and local reputation. It does not have a liquor license.
 {¶ 6} On October 30, 2003, plaintiff filed a complaint against defendants in the Muskingum County Court of Common Pleas. Plaintiff, in his complaint, alleged in part that defendants' use of the capital letters "TAT" in its restaurant name and sign are likely to cause confusion or misunderstanding as to the relationship or affiliation between the two restaurants. Plaintiff specifically sought an injunction restraining appellees from using the name "TAT's Pizzeria" or the capital letters "TAT" alleging that defendants' use of the name was a deceptive trade practice under R.C. 4165.02 and violated plaintiff's common law right to protection of his trade name.
 {¶ 7} On September 17, 2004, both parties filed motions for summary judgment. Pursuant to a judgment entry filed on December 16, 2004, the trial court denied plaintiff's motion while granting that filed by defendants. *Page 4 
 {¶ 8} Plaintiff timely appealed to this Court. On December 20, 2005, this Court reversed the trial court's decision and remanded the case to the trial court for further proceedings. Corrova v. Tatman, et al., (2005) 164 Ohio App.3d 784, 844 N.E.3d 366.
 {¶ 9} On June 27, 2006, the trial court held a bench trial. Both sides presented witness testimony and exhibits, including photographs of the signs for both establishments.
 {¶ 10} On July 31, 2006, the trial court issued findings of fact and conclusions of law. The trial court found, as a matter of law, that the defendants' use of the trade name Tat's Pizzeria South "is not likely to confuse, mislead or deceive the public" and denied plaintiff's request for injunctive relief.
 {¶ 11} Appellant now raises the following assignments of error on appeal:
 ASSIGNMENTS OF ERROR {¶ 12} "I. THE TRIAL COURT ERRED IN FAILING TO GRANT THE REQUESTED INJUNCTIVE RELIEF;
 {¶ 13} "II. THE TRIAL COURT ERRED IN FINDING THAT DEFENDANTS' RESTAURANT NAME AND SIGN ARE NOT LIKELY TO CONFUSE, MISLEAD OR DECEIVE THE PUBLIC;
 {¶ 14} "III. THE TRIAL COURT ERRED IN FAILING TO FIND THAT THE DEFENDANTS' RESTAURANT NAME AND SIGN ARE LIKELY TO CONFUSE, MISLEAD OR DECEIVE THE PUBLIC AND FURTHER ERRED IN FAILING TO FIND THAT THE DEFENDANTS' RESTAURANT NAME AND SIGN HAVE CONFUSED, MISLED, OR DECEIVED; *Page 5 
 {¶ 15} "IV. THE TRIAL COURT ERRED IN MAKING FINDINGS OF FACT WHICH WERE UNSUPPORTED BY THE EVIDENCE AND/OR WHICH WERE CONTRADICTED BY THE EVIDENCE; AND
 {¶ 16} "V. THE TRIAL COURT ERRED IN MAKING FINDINGS OF FACT WHICH WERE LEGALLY INCORRECT."
 I, II., III., IV. and V. {¶ 17} Plaintiff's assignments of error are all interrelated and will be addressed together. Essentially, plaintiff contends the trial court erred in concluding that the defendants' use of the capital letters "TAT" was not likely to result in confusion or deception.
 A. STANDARD OF REVIEW {¶ 18} This matter comes to us following a bench trial on the merits. Both claims for common law trademark infringement and violation of Ohio's Deceptive Trade Practices Act, R.C. 4165.02, mirror federal claim trademark infringement by requiring proof of likelihood of confusion.Daddy's Junky Music Stores, Inc. v. Big Daddy's Family MusicCenter, 109 F.3d 275, 288 (6th Cir. 1997). See also, Corrova, supra, at 789 Therefore, we also look to analogous Federal law to determine the applicable standard of review. In this regard, the U.S. Sixth Circuit Court of Appeals has indicated that a decision following a bench trial regarding likelihood of confusion constitutes a mixed question of fact and law, which an appellate court reviews for clear error when examining the underlying factual findings, but reviews de novo when determining whether those findings overall reveal a likelihood of confusion.Id. at 279, citing *Page 6 Champions Golf Club, Inc. v. Champions Golf Club, Inc., 78 F.3d 1111,1116 (6th Cir. 1996).
 {¶ 19} Thus, this Court will review de novo the trial court's legal conclusion there is no likelihood of confusion between the signs of the parties. We apply a clearly erroneous standard to the trial court's findings of fact supporting the likelihood of confusion factors. This standard of review applies to both to the common law and statutory claims.
 B. PLAINTIFF'S CLAIMS {¶ 20} Plaintiff's common-law deceptive-trade-practice claim is "based on the principle that it is a deceptive trade practice for one person to use a trade name similar to another person's established trade name, where the natural and probable consequence of the use of the similar name would be to mislead, deceive, or confuse the public into believing that there is an identity, affiliation, or relationship between the two persons." Leventhal Assoc., Inc. v. Thomson Central Ohio (1998),128 Ohio App.3d 188, 195, 714 N.E.2d 418.
 {¶ 21} In turn, plaintiff's statutory deceptive-trade-practices claim is based upon R.C. 4165.02(B), and (C), which provide:
 {¶ 22} "A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he: * * *
 {¶ 23} "(B) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
 {¶ 24} "(C) Causes likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another[.]" *Page 7 
 {¶ 25} As noted earlier, when adjudicating claims arising under the Ohio Deceptive Trade Practices Act, Ohio courts apply the same analysis applicable to claims commenced under analogous federal law. SeeCesare v. Work (1987), 36 Ohio App.3d 26, 28, 520 N.E.2d 586, 590. The standard of proof necessary to prevail in an action for injunctive relief is a showing of "likelihood of confusion." Id. at 29,520 N.E.2d 586, citing Frisch's Restaurants, Inc. v. Elby's Big Boy ofSteubenville, Inc. (C.A.6 1982), 670 F.2d 642, 647. Furthermore, a mere showing that trade practices tend to create a false impression is sufficient to warrant injunctive relief. Id. "Likelihood of confusion requires a showing that the ordinary consumer will be misled or deceived by the similarity between the products at issue." SeeLeventhal, supra, 128 Ohio App.3d, at 197, 714 N.E.2d 418.
 {¶ 26} Plaintiff's assignments of error relate to the issue whether there was a likelihood of confusion. When determining whether a likelihood of confusion exists, a court must examine and weigh eight factors: (1) strength of the senior mark; (2) relatedness of the goods and services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) the intent of defendant in selecting the mark; and (8) likelihood of expansion of the product lines. Daddy's Junky MusicStore, supra, at 280.
 {¶ 27} Appellant argues he was able to show actual confusion. Evidence of "actual confusion is positive proof of the likelihood of confusion."Today's Headlines, Inc. v. Abel (1984), 473 N.E.2d 1224. Nonetheless, "actual confusion" is only one of several factors for a court to consider. Isolated or minimal instances of actual confusion are obviously less probative than a showing of substantial actual confusion.Champion Golf *Page 8 Club, Inc. v. The Champions Golf Club, Inc., 78 F.3d 1111, 1119 — 1120 (6th Cir. 1996). The eight factors discussed above "serve only as guides on the analytical route to the ultimate determination of whether confusion is likely to result" from the simulanteous use of certain marks. Id. at 1122.
 C. EVIDENCE {¶ 28} At trial, Plaintiff presented five lay witnesses to testify as to their confusion between the TAT Restaurant and Tat's Pizzeria. This Court reviews the testimony of the witnesses with an eye to the fact that the trial court is in a better position to judge credibility.
 {¶ 29} Julia Geary, a resident of Perry County and long-time customer of the TAT, who also had patronized Adornetto's and Tat's in Zanesville, testified as follows:
 {¶ 30} "Q. And what did you think when you saw the restaurant that used to be Adornetto's Pizza now had a sign in front of it that had a T A T on it?
 {¶ 31} "A. We presumed it was the one that we went to in Columbus all these years.
 {¶ 32} "Q. And exactly what made you think that?
 {¶ 33} "A. Well, the — similarity in the signs and they both said pizzeria on them, and the — the lettering of the sign, it was about the same.
 {¶ 34} "Q. So, basically it was the T A T that —
 {¶ 35} "A. Yeah, the T A T is what we — we always called it.
 {¶ 36} "Q. And how did the — did the T A T, TAT'S Restaurant in Zanesville compare to the one in Columbus? *Page 9 
 {¶ 37} "A. Well, my husband had to ask, you know, if — if he had taken this over, the T A T in Columbus, and the — the girl, the waitress there had said, well, she didn't know anything about that. So —
 {¶ 38} "Q. So, your husband asked the waitress?
 {¶ 39} "A. Yes, he inquired about that.
 {¶ 40} "Q. A waitress in Zanesville?
 {¶ 41} "A. Yes. And she didn't know anything about the T A T in Columbus.
 {¶ 42} "Q. So, was that how you found out —
 {¶ 43} "A. It was just a waitress and she didn't know anything. Yeah, that's not really — we looked at the menu and the menu hadn't really changed from the menu that had been Adornetto's.
 {¶ 44} "Q. Okay. So, how did you find out that the restaurant was not related to Mr. Corrova's restaurant in Columbus?
 {¶ 45} "A. We tried their spaghetti again and it wasn't — it was the same spaghetti as the — or similar to Adornetto's, so —
 {¶ 46} "Q. So, because the spaghetti was the same, you realized it wasn't Mr. Corrova's restaurant?
 {¶ 47} "A. Yes, and the menu was about the same. It didn't have the different variety of food that they had in Columbus." (T. at 67-68.)
 {¶ 48} On cross-examination, Mrs. Geary admitted that the name change from from Adonetto's to Tat's did not stop her from going to the TAT in Columbus. (T. at 70.) *Page 10 
 {¶ 49} Next, Katherine Young, also a resident of Perry County and long-time customer of the TAT, who also had patronized Adornetto's and Tat's in Zanesville, testified:
 {¶ 50} "Q. And do you recall when the restaurant changed its name from Adornetto's to TAT'S?
 {¶ 51} "A. At least a couple years ago; maybe three.
 {¶ 52} "Q. And how did you become aware of that, that the restaurant had changed its name?
 {¶ 53} "A. I drove by and noticed the sign.
 {¶ 54} "Q. And what did you think when you saw the — a T A T sign over what used to be Adornetto's?
 {¶ 55} "A. I thought: Oh, T A T, I wonder if Mr. Corrova started another restaurant here in Zanesville or bought this one.
 {¶ 56} "Q. And exactly what made you think that?
 {¶ 57} "A. Because of the way the sign was, I guess. It was all capital letters on the TAT, and that's what I was familiar with, so — I don't know that I would have ever thought to say TAT'S as a word rather than as letters." (T. at 75.)
 {¶ 58} On cross-examination, Ms. Young also admitted that the changing of the name from Adornetto's to Tat's did not stop her from going to the TAT in Columbus. (T. at 78.)
 {¶ 59} Next, Carma Jean Rausch, also a resident of Perry County and long-time customer of the TAT, who also had patronized Adornetto's and Tat's in Zanesville testified: *Page 11 
 {¶ 60} "Q. And how did you become aware that the Adornetto's Pizzeria on Maysville Pike had changed its name to TAT'S?
 {¶ 61} "A. Marge and I just happened to be going to Zanesville and we both noticed the sign at the same time.
 {¶ 62} "Q. And what did you think when you saw the sign in front of what used to be Adornetto's that now says TAT'S?
 {¶ 63} "A. The first thing I noticed was the capital letters T A T and I automatically saw the front of the building in Columbus, T A T.
 {¶ 64} "Q. Did you think it was Mr. Corrova's restaurant?
 {¶ 65} "A. No, I can't say that I did, because I figured if — if that were in the hopper, I would have known it before it happened. So, I didn't really think that it was connected." (T. at 86.)
 {¶ 66} Next, Norma Lee Allen, also a resident of Perry County who had eaten at Adornetto's and whose mother was a long-time customer of the TAT, testified:
 {¶ 67} "Q. And how did you become aware that the Adornetto's had changed its name to TAT's Pizzeria?
 {¶ 68} "A. Well, I saw it as I drove by. I live in Perry County, and when I was driving in on Maysville Road to come to Zanesville, I saw there is a T A T Restaurant. And I thought: Hmm, I wonder if that's the same restaurant that was in Columbus, because it's a well-known restaurant in Columbus. And that's how I — I knew that — you know, that it had changed names from Adornetto's to T A T. * * *
 {¶ 69} "Q. What about the sign that you saw on the Zanesville restaurant made you think it was related to the Columbus restaurant? *Page 12 
 {¶ 70} "A. Because it said T A T, and I just saw T A T and I thought: Oh, I wonder if that's that same restaurant. I knew they had — my mother said they had very good food. I thought: Well, if it is, I will probably stop there sometime." (T. at 100-101.)
 {¶ 71} In addition to the four witnesses from Perry County, the Appellant also presented the testimony of Frank Fahner. Mr. Fahner is a resident of Licking County and a long-time patron of the TAT, who frequently visited the Zanesville area. He had noticed the change of the sign from Adornetto's to TAT's Pizzeria on Maysville Pike. He further testified: "I couldn't understand why he [Mr. Corrova] would be building a TAT'S in Zanesville, especially South Zanesville." (T. at 35-36.) He further testified:
 {¶ 72} "Q. And what did you think when you saw the sign that said TAT'S Pizzeria?
 {¶ 73} "A. I immediately just thought of James Road and that's — that's why I — I just presumed that he was building a restaurant there and couldn't understand why.
 {¶ 74} "Q. And why did you assume it was Mr. Corrova's restaurant?
 {¶ 75} "A. Just because of the signage.
 {¶ 76} "Q. And what about the sign made you think it was Mr. Corrova's restaurant?
 {¶ 77} "A. Saying T A T, TAT'S, however you want to look at it." (T. at 36.)
 {¶ 78} These five witnesses may be considered ordinary consumers for the purposes of this analysis. The record also reveals that Ms. Raush was friends with both Mrs. Young and Ms. Allen, and Mr. Fahner was a client of plaintiff's counsel.
 {¶ 79} In addition to this testimony, plaintiff himself testified regarding a situation wherein he called a food supplier, Sysco Inc., and asked them to send a bill to him for *Page 13 
review and Sysco faxed to him an invoice belonging to an order placed by Tat's in Zanesville. On prior occasions, plaintiff also had purchased radio advertising reaching the Muskingum County listening area but he had rarely purchased print advertising reaching Muskingum County until after the defendant's changed their name to Tat's.
 {¶ 80} Plaintiff, his daughter, and son-in-law also testified regarding inquires from TAT's customers and acquaintances regarding the TAT's connection to the Tat's in Zanesville.
 {¶ 81} The defense presented two witnesses at trial, John Tatman, the owner of Tat's, and his son, Robert Tatman, a manager of the restaurant. Robert Tatman testified that "Tat" was his nickname growing up and when the business changed from Adornetto's, he "wanted something where our base of customers who know us in South Zanesville would know that it was still us switching from Adornetto's." (T. at 126.) He testified the sign for the restaurant was jointly created by him and his wife without any knowledge of the Columbus restaurant or its sign. (T. at 127.) They kept the same red and green as used by Ardonetto's. Tr. at 134. He acknowledged that on about three occasions, he received inquiries about any relationship to the TAT in Columbus. (T. at 125.)
 {¶ 82} John Tatman testified that he started in the pizza business in 1978 under a 25-year franchise agreement with Adornetto's and when the franchised expired, the name was changed to Tat's Pizzeria in December 2002, without knowledge of the TAT in Columbus. *Page 14 
 D. TRIAL COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW {¶ 83} Relevant to the issue of whether the natural and probable consequence of the use of similar names would be to mislead, deceive, or confuse the public into believing that there is an identity, affiliation, or relationship between the two restaurants, the trial court made this factual finding: "The only individuals who testified that they were confused about the two were one group of ladies who all knew each other from New Lexington, Ohio". (Judgment Entry, Finding of Fact, No. 8.)
 {¶ 84} Our review of the entire evidence in this case indicates that this particular finding of fact by the trial court was clearly erroneous. The trial court's Findings of Fact are copied verbatim from the Proposed Findings of Fact submitted by defendant's counsel. It is apparent the trial court overlooked or inadequately considered the testimony presented by witnesses other than Ms. Young, Rausch and Allen.
 {¶ 85} Although the trial court may have erred on one of the foundational facts, we are not convinced, after conducting a de novo review, that the trial court's ultimate determination of likelihood of confusion should be reversed or the equitable remedy of injunctive relief be granted to plaintiff.
 E. DE NOVO REVIEW {¶ 86} At the outset, the pronunciation of the names of the two restaurants is clearly distinct and separate. The only similarity between them is when they are capitalized. Although this may have caused some long-time patrons of the TAT to wonder if there was an affiliation between the two restaurants, the trial court was in a *Page 15 
better position to determine the credibility, bias and weight of their testimony in determining the relevant factors, as set forth above.
 {¶ 87} In addition, while we agree the TAT's reputation for good food and quality service was established in Columbus and surrounding counties, the geographical distance between the these two relatively small family-owned businesses, as well as the fact that plaintiff had not established a visual presence in Muskingum County prior to the name change by defendants, raises a presumption against the likelihood of confusion in the future. We also are hesitant to employ the extraordinary remedy of a permanent injunction to limit or restrict the use of a family or personal name for one's business, which is a fairly common practice, particularly in this instance, when there is no evidence either business intends to expand beyond their current area, and their product lines (pizza and pasta) are fairly common in most localities. Lastly, no evidence was offered to establish that defendants sought to imitate, copy, or profit from the plaintiff's goodwill.
 {¶ 88} We therefore affirm the ultimate determination of no "likelihood of confusion" based upon the trial court's findings of fact which are supported by the evidence and/or not challenged by plaintiff in this appeal. *Page 16 
 {¶ 89} For these reasons, the judgment of the Muskingum County Court of Common Pleas is affirmed.
Delaney, J. and Edwards, J. concur.
 Hoffman, P.J. dissenting *Page 17