**INTERACTIVE PRODUCTS
CORPORATION,**
Plaintiff,

v.

**A2Z MOBILE OFFICE SOLUTIONS,
INC., et al., Defendants.**

No. C–1–99–731.

United States District Court, S.D. Ohio,
Western Division.

April 24, 2001.

the $75/$75 per hour rate was implemented.

John J. Helbling, Cincinnati, OH, Mark F. Smith, Eric W. Guttag, Mason, OH, for Plaintiff.

Charles Hartley Melville, Cincinnati, OH, Thomas P. Liniak, Liniak, Berenato, Longacre & White, Bethesda, MD, for Defendants.

Joseph P. Mehrle, David Liles, Dinsmore & Shohl, Cincinnati, OH, James, for Mobile Office Enterprise.

### ORDER

BECKWITH, District Judge.

This matter is before the Court on Motions for summary judgment filed by Defendants Brian Lee and a2z Mobile Office Solutions, Inc. (Doc. No. 28) and Defendants Douglas Mayer and Mobile Office Enterprise, Inc. (Doc. No. 29). For the reasons set forth below, both motions for summary judgment are **GRANTED IN PART AND MOOT IN PART.**

### I. *Background*

The dispute in this case stakes out the new frontier of the Internet as its battleground but apparently has its roots in old-fashioned bad blood and convoluted legal theories. The relevant facts, however, are undisputed. The principals in this case are Mark Comeaux, president of Plaintiff Interactive Products Corporation ("IPC"), Defendant Brian Lee, president of Defendant a2z Mobile Office Solutions, Inc. ("a2z"), and Defendant Douglas Mayer, president of Defendant Mobile Office Enterprise, Inc. ("MOE"). The players in this case are involved in either the manufacture or sale of portable computer stands for use in automobiles.[1]

At one time Mayer and Comeaux were partners and/or co-founders of IPC, through which they developed and sold a portable computer stand called the Lap Traveler. "Lap Traveler" is a federally registered trademark of IPC. Defendant a2z sells mobile computer accessories

through its Internet website and at one time carried the Lap Traveler in its line of products. In 1998, Comeaux and Mayer had a falling out which resulted in Comeaux filing a lawsuit in state court for dissolution of IPC. In December 1998, Comeaux and Mayer entered into a settlement agreement on Comeaux's dissolution petition. In pertinent part, the settlement agreement called for Comeaux to purchase all of Mayer's shares of stock in IPC for $33,000. The agreement further provided that:

6. The parties agree that the right to use the "Lap Traveler" name and model designations, and the names and model designations of all other IPC products marketed at any time prior to the execution of the agreement, is and shall remain the exclusive property of IPC. Mayer ... shall have no right to use these product names or model designations.

7. Mayer, Comeaux, and IPC shall all have the right to manufacture, market and sell products similar to or identical to the Lap Traveler products currently marketed by IPC, including but not limited to the Lap Traveler.... Mayer shall not be entitled to use the Lap Traveler name or model designations in connection with such sales and marketing, although he and Comeaux shall each be entitled to claim that they were jointly the inventor of Lap Traveler products.

*See* Complaint Ex. 16 ¶¶ 6, 7. Nothing in the terms of the settlement required any party to keep the terms of the agreement confidential. Mayer then went on to form MOE, through which he manufactured a

---

1. The portable computer stands provide a means to secure a laptop computer in a moving vehicle and yet provide availability and convenience of use from the driver's seat (hopefully while the car is at rest).

portable computer stand called The Mobile Desk.

In January 1999, Comeaux refused to allow a2z to continue selling the Lap Traveler through the a2z website. At about the same time, a2z began selling the Mobile Desk through its website. Throughout 1999, a2z posted the following message on its website:

> **Important announcement about the Lap Traveler Product** The original Lap Traveler was co-developed by Doug Mayer his ex-partner. They have split. a2z carries the redesigned and improved product—The Mobile Desk®

*See* Doc. No. 28, Ex. I ("the Announcement"). It is undisputed that Mayer provided Lee with a copy of the settlement agreement entered into by Mayer and Comeaux and that Lee used it as basis to draft the Announcement.

IPC claims that during August of 1999, Comeaux performed web searches on the Internet using "LAPTRAVELER" as search term on various search engines. The searches consistently resulted in showing the URL[2] http://www.a2zsolutions.com/ desks/floor/laptraveler/dkfl-lt.htm. Examples of Comeaux's web searches are listed at Exhibits 9 through 11 of the Complaint. Furthermore, typing the URL http:// www.a2zsolutions.com/desks/floor/ laptraveler in the browser's location bar generates a page entitled "Index of desks/floors/laptraveler" which lists individual files within that directory, including the file dkfl-lt.html. *See* Complaint ¶ 35; *see also* Complaint Ex. 13. The first URL is or was the webpage containing the Announcement, while the second URL can be used to link to the page containing the Announcement. At the time IPC ended the business relationship between it and a2z, in January 1999, IPC demanded that a2z remove from its website all references to the Lap Traveler.

On September 13, 1999, IPC filed an eight count complaint against Brian Lee and a2z and Douglas Mayer and MOE under the federal Trademark Act, the Lanham Act, and the Ohio Deceptive Trade Practices Act, and the common law of the state of Ohio. Counts I through V and Count VIII are related to use of the term "laptraveler" in certain URL's of a2z's website and the alleged misleading nature of the Announcement. Counts VI and VII assert breach of contract claims based on Mayer providing Lee with a copy of the Mayer/Comeaux settlement agreement. To be specific, Count I asserts a claim for infringement under the Trademark Act, 15 U.S.C. § 1114(1). MOE's and Mayer's liability is apparently premised on an agency or aider and abettor theory. Count II of the Complaint asserts a claim under the Lanham Act, 15 U.S.C. § 1125, for false designation of origin and for false and/or misleading advertising. Count III of the Complaint asserts a claim for trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c). Counts IV and V assert parallel state law claims for trademark infringement and false designation of origin under the Ohio Deceptive Trade Practices Act, Ohio Revised Code § 4165.02, and the common law of Ohio. The theory in Count VI is somewhat hard to follow, but appears to allege that Mayer breached the Comeaux/Mayer settlement agreement by allowing a2z to use the Lap Traveler trademark on its website (even though Mayer was not responsible for maintaining the website). Count VII alleges that Lee, a2z, and MOE induced Mayer into breaching the settlement agreement by a2z's use of the Lap Travel-

---

**2.** "URL" is an abbreviation for the term "universal resource locator"—the page's address on the web.

er trademark. Count VIII alleges that Defendants' alleged improper use of the Lap Traveler trademark tortiously interfered with IPC's existing and prospective business relationships.

The Complaint seeks a permanent injunction enjoining Defendants from infringing the Lap Traveler trademark, including its use in any manner on their websites; a permanent injunction preventing Defendants from breaching or inducing the breach of the Comeaux/Mayer settlement agreement; a permanent injunction preventing Defendants from disparaging products distributed and sold by IPC and preventing Defendants from making misrepresentations about IPC's products; a permanent injunction enjoining Defendants from interfering with IPC's business relationships; surrender of any materials bearing the Lap Traveler trademark; an accounting of profits; an award of compensatory and treble damages; and an award of punitive damages and costs.

On December 15, 2000, Defendants a2z and Lee filed a motion for summary judgment (Doc. No. 28) as to each count of the Complaint. With respect to the trademark infringement claim, Defendants argue that the use of the term "laptraveler" in the post-domain path of the a2z website is a non-infringing use of the Lap Traveler trademark as a matter of law. Defendants further argue that the Announcement was not only factually accurate and non-misleading, but also a non-infringing use of the trademark. Defendants also argue that summary judgment in its favor is appropriate on the false designation of ori-

gin claims because there is no evidence of actual confusion in the market. Defendants argue that summary judgment is appropriate on the trademark dilution claim because: 1) their use of "Lap Traveler" was a non-infringing use; 2) Lap Traveler is not a "famous mark"; and 3) there is no proof of actual dilution or likelihood of dilution. Defendants contend that summary judgment is appropriate on the claims related to the alleged breach of the settlement agreement because Mayer did not in fact breach the settlement agreement. Defendants contend that summary judgment is appropriate on the tortious interference claim because their use of Lap Traveler was fair and justified and because there is no evidence of actual interference with IPC's business relationships. Finally, Defendants contend that summary judgment in their favor is appropriate under the unclean hands doctrine because IPC uses other companies' trademarks on its website too.

Defendants Mayer and MOE filed a motion for summary judgment (Doc. No. 29) on the same day. First, Defendants contend that there is no evidence that they were agents of a2z; therefore, they cannot be held liable for a2z's alleged infringement of IPC's trademark. In any event, Defendants argue, a2z's use of the Lap Traveler trademark was non-infringing. Finally, these Defendants also assert an unclean hands defense.

Defendants' motions for summary judgment have been fully briefed and are now ready for disposition.[3]

---

**3.** IPC has before the Court objections to an order entered by Magistrate Judge Sherman ruling that IPC could not depose defense counsel. *See* Doc. No. 39. IPC filed a motion to compel their depositions based on alleged witness coaching and improper communication during IPC's deposition of a2z President Brian Lee. Magistrate Judge Sherman denied the motion and awarded Defen-

dants their costs of defending the motion. *See* Doc. No. 37. IPC does not claim that its inability to depose defense counsel has prevented it from responding adequately to the motions for summary judgment. The Court addresses IPC's objections to Magistrate Judge Sherman's ruling in a separate order filed contemporaneously herewith.

## II. The Summary Judgment Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

■ The Court will not grant summary judgment unless it is clear that a trial is unnecessary. The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.*

■ The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 472, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). "[T]he issue of material fact required by Rule 56© ... to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." *First National Bank v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.* at 323, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548. Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who

fails to make that showing with significantly probative evidence. *Id.; Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.*

■ Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim. *Id.* Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits." Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

### III. *Analysis*

#### A. *Trademark Infringement and False Designation of Origin*

■ As stated by the Sixth Circuit, the touchstone of liability for trademark infringement is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties. *See Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center,* 109 F.3d 275, 279 (6th Cir.1997). In determining whether a likelihood of confusion exists, the court should examine and weigh the following factors: 1) the strength of the senior mark; 2) relatedness of the goods and services; 3) the similarity of the marks; 4) evidence of actual confusion; 5) the marketing channels used; 6) likely degree of purchaser care; 7) the intent of the defendant in selecting the mark; and 8) the likelihood of expansion of the product lines. *Id.* In weighing these factors, the Court has cautioned that they cannot be applied with mathematical precision, but rather must be evaluated in the context of

the particular case with the ultimate question remaining whether consumers are likely to believe that the products or services of the parties are affiliated in some way. *Id.*

■ A false designation of origin claim under the Lanham Act contains two elements: 1) the false designation must have a substantial effect on interstate commerce; and 2) the false designation must create a likelihood of confusion. *Johnson v. Jones,* 149 F.3d 494, 502 (6th Cir., 1998). The factors for determining likelihood of confusion for a false designation of origin claim are identical to those for a trademark infringement claim. *Compare id.* at 502–03, *with,Big Daddy's Junky Music,* 109 F.3d at 280.

■ The Court next observes that claims for trademark infringement and false designation of origin under the Ohio Deceptive Trade Practices Act and Ohio common law are subject to the same likelihood of confusion standards as their federal counterparts. *See Big Daddy's Junky Music,* 109 F.3d at 288. Therefore, whether there is a genuine issue of fact as to likelihood of confusion is dispositive of the motions for summary judgment on Counts I through V of the Complaint. Finally, the Court agrees with Mayer and MOE that if Lee's and a2z's use of Lap Traveler was non-infringing, then no liability on these Counts falls on them.

#### 1. *Use of "laptraveler" in a2z's URL's*

■ As the Court has noted, IPC takes issue with a2z's use of the term laptraveler in certain URL's in its website. Lee and a2z rely on two cases for the proposition that use of a trademark in the post-domain path of a URL is not an infringing use as a matter of law. Indeed, there appear to be only two cases in the entire country that have even addressed the issue. In *Patmont Motor Werks, Inc. v. Gateway Ma-*

*rine, Inc.,* No. C 96–2703, 1997 WL 811770 (N.D.Cal. Dec.18, 1997), the district court observed that the post-domain path of a URL, i.e. that text (in this case, "desks/floor/laptraveler/dkfl-lt.htm") of the URL which follows the domain name (in this case, "a2zsolutions.com") merely shows how the website's data is organized within the host's computer files, but says nothing about source or origin, as does the domain name. *Id.* at *4 n. 6 Therefore, the court concluded that the use of the mark in the post-domain path did not suggest the plaintiff's sponsorship or endorsement of the website. *Id.* In *PACCAR, Inc. v. Telescan Tech., L.L.C.,* 115 F.Supp.2d 772 (E.D.Mich.2000), the district court relied on *Patmont* for the proposition that "some authority suggests that the use of trademarks in the post-domain path of a URL is acceptable." *Id.* at 780. IPC attempts to distinguish these cases from the present case on the grounds that in the cited cases the defendants actually sold the plaintiff's product at the URL address whereas in this case, a2z does not sell the Lap Traveler at that URL. IPC, however, cites no authority for the proposition that use of a trademark in a post-domain path *is* an infringing use of a trademark and the Court finds IPC's attempts to distinguish the cases cited unpersuasive. Nonetheless, the Court will examine a2z's use of the term laptraveler in the context of the factors outlined in *Big Daddy's Music.*

The Court notes at the outset that there is no evidence in the record as to the strength of the mark, likely degree of purchaser care, or likelihood of expansion of product lines. In addition, there is no evidence on a2z's intent in using laptraveler in this URL, although it seems as likely as not that a2z simply never changed the URL address after IPC and a2z stopped doing business together. The goods sold by IPC and a2z are essentially identical

and they both use the Internet as a marketing channel.[4] The marks, i.e., "Lap Traveler" and "lap traveler", are identical. Finally, as Defendants correctly point out, although IPC's expert states that the URL would be "less confusing" without the term "laptraveler" in the URL, there is no evidence in the record that the URL is actually confusing to consumers. The end result is that there is no evidence on four of the factors (strength of mark, degree of purchaser care, defendant's intent, and likelihood of expansion), three factors which apparently weigh in favor of IPC (relatedness of goods, similarity of marks, and marketing channels), and one factor which weighs in favor of Defendants (absence of actual confusion).

Although it appears, at least superficially, that the balance of factors weighs toward IPC, the Court is mindful that these factors cannot be applied mathematically and that the ultimate issue is whether consumers are likely to believe that the parties' goods are affiliated in someway. With that caveat in mind, the absence of evidence in most of the areas weighs more heavily than the factors which apparently favor IPC. For instance, with no evidence on the degree of purchaser care and no evidence of actual confusion by consumers, it is difficult to conclude that consumers are likely to be confused by the use of "laptraveler" in a URL post-domain path, particularly when the URL does not appear anywhere on the webpage and is not in fact the focus of the visitor's attention. *See, e.g., Jet, Inc. v. Sewage Aeration Sys.,* 165 F.3d 419, 424 (6th Cir.1999) (holding summary judgment in defendant's favor appropriate although it was undisputed that parties were in direct competition and sold related products through the same channels; due to high degree of purchaser care, reasonable jury could not find likelihood of confusion among consumers). In

4. Customers can purchase the Lap Traveler    directly from IPC at www.laptraveler.com.

addition, not only is there no evidence that a2z intended to use "laptraveler" to create confusion, the undisputed evidence is the a2z wanted to *prevent* confusion among consumers who had either bought the Lap Traveler from it in the past or who had heard that a2z was a source for purchasing the Lap Traveler. *See* Lee Dep. at 155–56, 302–06.

Moreover, the above factors should be examined in light of other evidence which does not fit neatly into one of the categories and yet bears on the issue of likelihood of confusion. IPC's primary complaint about "laptraveler" appearing in the URL appears to be that search engines ranked www. a2zsolutions.com/desks/floor/laptraveler/dkfl-lt.htm high on the results list, which presumably meant more traffic to a2z's website. Yet, Plaintiff's own expert stated that the presence of the term "laptraveler" in the URL does not bias the search engine. *See* Doc. No. 28, Ex. K, at 8. Finally, there is no evidence that a2z used "laptraveler" as a metatag, which does influence search engines and has been held to be an infringing use of a trademark.[5]

Upon review of the record, the Court finds no genuine issue of material facts that consumers are likely to be confused by the use of "laptraveler" in the post-domain path of a2z's URL. Accordingly, summary judgment in Defendants' favor on this claim is appropriate.

■ Likewise, the Court is persuaded that summary judgment in Defendants' favor is appropriate on IPC's claim that use of the word laptraveler at http://www.a2zsolutions.com/desks/floor/ laptraveler (which generates a page entitled "Index of desks/floors/laptraveler") is an infringing act. As Defendants correctly point out, it is uncontroverted that the title page complained of is not an actual page on a2z's website, but rather is generated when an Internet user enters an incomplete URL in the location bar of his or her web browser. *See* Doc. No. 28, Ex. H, Lee Aff. ¶ 1. Therefore, there is no "use" by Defendants of IPC's registered trademark in this instance.

### 2. The Announcement

■ Finally, we come to IPC's contention that the Announcement constitutes a Lanham Act violation because it is false, misleading and deceptive. Defendants contend that the Announcement is literally true and therefore does not violate the Lanham Act. The Court again sets forth the language of the announcement:

> **Important announcement about the Lap Traveler Product** The original Lap Traveler was co-developed by Doug Mayer his ex-partner. They have split. a2z carries the redesigned and improved product—The Mobile Desk®

Plaintiff does not necessarily dispute that the Announcement is literally true,[6] but

---

5. Metatags are invisible bits of HTML code which describe the contents of the website. The more often a metatag is used on a website the more likely the search engine will hit that website and produce a higher ranking among all other hits. *See PACCAR, Inc.,* 115 F.Supp.2d at 776. A defendant's use of metatags to lure Internet users to his website instead of the trademark holder's website is an infringing use of the trademark. *See, e.g., SNA, Inc. v. Array,* 51 F.Supp.2d 554, 562–63 (E.D.Pa.1999).

6. Although IPC "submitted" that the Announcement is factually false, *see* Doc. No. 32, at 11, as Defendants correctly point out, Plaintiff has not taken issue with any of the individual statements in the Announcement or demonstrated how the statements are factually false. The Announcement is not in fact factually false. Doug Mayer did co-develop the Lap Traveler and he did split with his partner, Mark Comeaux. a2z does carry the Mobile Desk. Calling the Mobile Desk "redesigned and improved" is mere puffery which is not actionable under the Lanham Act. *See Pizza*

contends that it is misleading in that the announcement could be read to state that the original maker of the Lap Traveler is no longer in business, that Lap Traveler is the name of the maker of the original product (apparently as opposed to IPC), and that the original Lap Traveler is obsolete.

When a statement in an advertisement is literally true and yet claimed to be misleading, the plaintiff is required to demonstrate that a substantial portion of the intended audience was either deceived or tended to be deceived by the advertisement. *See American Council of Certified Podiatric Physicians & Surgeons v. American Bd. of Podiatric Surg., Inc.,* 185 F.3d 606, 616–17 (6th Cir.1999). In this case, the only evidence of deception are the hearsay statements of a customer of IPC who told Comeaux that two of *his* customers were confused by the Announcement. Defendants argue correctly that the hearsay statements of IPC's customer are inadmissible and, therefore, do not create a genuine issue of fact on deception. In any event, even if the Court accepts this evidence, unless we have been seriously misled about the size of the market for this kind of product, two customers hardly constitutes a significant portion of the intended audience. *See id.* at 617 ("[E]ven if Coles were deceived, this one letter is a far cry from demonstrating that a 'significant portion' of the consumer population was deceived."). Accordingly, summary judgment in Defendants' favor on this claim is appropriate as well.

In summary, the Court finds no triable issues on IPC's claims for trademark infringement, false designation of origin, and false and misleading advertising. Accordingly, Defendant Lee's and Defendant

a2z's motion for summary judgment on Counts I, II, IV and V is well-taken **and is GRANTED.** Because Defendant Mayer's and Defendant MOE's liability is entirely derivative of Lee's and a2z's, their motion for summary judgment as to these counts is well-taken and is **GRANTED.** Counts I, II, IV and V are **DISMISSED WITH PREJUDICE.**

### B. *Trademark Dilution*

Count III of the Complaint asserts a claim for trademark dilution under the Lanham Act, 15 U.S.C. § 1125(c). A claim of dilution under § 1125(c) consists of the following elements: 1) the senior mark must be famous; 2) it must be distinctive; 3) the junior use must be a commercial use in commerce; 4) it must begin after the senior mark has become famous; and 5) it must cause dilution of the distinctive quality of the senior mark. *Kellogg Co. v. Exxon Corp.,* 209 F.3d 562, 577 (6th Cir.2000). Defendants argue that summary judgment in their favor is appropriate because they used "laptraveler" in a non-trademark way, and, in any event, because IPC's mark has not attained sufficient fame to be protected from dilution under the Lanham Act. Because the Court agrees with Defendants' first argument, it need not address whether the mark "Lap Traveler" is famous within the meaning of the statute.

In order for liability to attach for dilution under the Lanham Act, the defendant must make commercial or trademark use of the mark. *Avery Dennison Corp. v. Sumpton,* 189 F.3d 868, 879–80 (9th Cir. 1999). In this case, Defendants are correct that their use of Lap Traveler was non-commercial and/or non-trademark. As explained above, the use of "laptravel-

*Hut, Inc. v. Papa John's Int'l, Inc.,* 227 F.3d 489, 496–97 (5th Cir.2000) (holding puffery non-actionable under the Lanham Act; puffery includes "a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than an expression of opinion.").

er" in the post-domain path of a2z's URL was not an attempt to capitalize or infringe upon the Lap Traveler trademark. The Announcement is completely truthful and, at worst, is non-actionable puffery. *See Pizza Hut, Inc.,* 227 F.3d at 496–97. Therefore, the Court finds no cause of action for trademark dilution as a matter of law. Accordingly, Defendants' respective motions for summary judgment as to Count III of the Complaint are well-taken and are **GRANTED.** Count III of the Complaint is **DISMISSED WITH PREJUDICE.**

### C. *Pendent State Laws*

Counts VI, VII, VIII of the Complaint assert pendent state law claims for breach of contract, inducement to breach contract, and tortious interference with existing and prospective business relationships. Having dismissed all of IPC's federal claims and the mirror image state law claims, the Court declines to exercise supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367(c). *See Hankins v. The Gap, Inc.,* 84 F.3d 797, 802–03 (6th Cir.1996). This course of action seems particularly appropriate given the convoluted nature of IPC's breach of contract claims. Accordingly, Counts VI, VII, and VIII of the Complaint are **DISMISSED WITHOUT PREJUDICE.** Defendants' motions for summary judgment are, therefore, **MOOT** with respect to these Counts.

### *Conclusion*

In conclusion, Defendants' respective motions for summary judgment (Doc. Nos. 28 & 29) are **GRANTED IN PART AND MOOT IN PART.** The motions are well-taken and **GRANTED** with respect to Counts I–V of the Complaint. Those Counts are **DISMISSED WITH PREJUDICE.** The motions are **MOOT** with respect to Counts VI–VIII. Those Counts are **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1367(c).

**IT IS SO ORDERED**